Jan Ginther ROSE, as Independent Co–Executrix of the Estate of Wilbur L. Ginther, Deceased, Appellant,

v.

BAKER & BOTTS, Thomas M. Phillips, and Lawrence A. Mann, Appellees.

No. 01–90–00944–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 12, 1991.

Rehearing Denied Oct. 10, 1991.

Michael P. Mallia, Houston, for appellant.

Harry M. Reasoner, Houston, for appellees.

Before SAM BASS, PRICE [1] and DUNN, JJ.

## OPINION

DUNN, Justice.

This is an appeal from a summary judgment. The appellant, Jan Ginther Rose (Rose), independent co-executrix of the estate of her father, sued the law firm and the two lawyers who represented her father's interests for legal malpractice. The defendants moved for summary judgment based on the statute of limitations. The trial court granted the motion on statute of limitations grounds.

Rose's father, Wilbur L. Ginther (Ginther), and Howard C. Warren (collectively, Ginther/Warren) were business partners who lost their rights in the Alexander Lease, an oil and gas lease located in Webb County, Texas, to Henry Taub and William MacNaughton. In an attempt to recover their rights, Ginther/Warren employed the Houston law firm of Baker & Botts, an appellee here, to sue Taub and MacNaughton. Appellee Thomas M. Phillips (Phillips) is an attorney with Baker & Botts who worked on the case for Ginther/Warren. Appellee Lawrence A. Mann (Mann) is a Laredo attorney who served as local counsel for Ginther/Warren. Unless otherwise designated, the two lawyers and the law firm will be collectively identified as "Baker & Botts." The suit by Ginther/Warren

against Taub and MacNaughton was filed in Webb County in 1974.

Baker & Botts and Ginther/Warren signed a fee contract for services rendered by Baker & Botts dated October 16, 1974. Under the 1974 contract, Baker & Botts received a joint, undivided one-fifth interest in the Alexander Lease, a one-fifth interest in all settlements, benefits, and proceeds arising from the lease, and reimbursement for all expenses incurred in connection with the representation. Expenses were to be paid monthly as billed.

In 1976, after a jury trial, Ginther/Warren lost the lawsuit. Baker & Botts obtained a new trial in September 1976. At this juncture, before the second trial, Baker & Botts negotiated a second fee contract with Ginther/Warren. The 1976 contract gave Baker & Botts (1) an additional $13\frac{1}{3}\%$ interest in the lease and (2) an additional $6\frac{2}{3}\%$ interest in the lease in the event of an appeal from the trial court judgment. The second contract provided that, with the exception of these modifications and those of November 18, 1974, which are not at issue in this appeal, the October 1974 contract continued to be operative.

The "new trial" resulted in a summary judgment for Taub and MacNaughton in 1977. The Waco Court of Appeals reversed the summary judgment, and the Texas Supreme Court refused the petition for writ of error in the case. In 1980, after a second trial and a jury verdict in favor of Ginther/Warren, judgment was rendered for them. Taub appealed, the Beaumont Court of Appeals reversed the judgment, the Texas Supreme Court reinstated the trial court judgment, and Ginther/Warren effectively recovered their rights in the lease in 1984. Warren was already dead, and Ginther died in November 1985. Baker & Botts' efforts to collect the proceeds Ginther/Warren were entitled to as a result of the judgment appear to be ongoing, and have involved claims in the bankruptcy courts.

---

1. The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

Following Ginther's death, Rose was named co-executrix of his estate. Over a period of time, she became dissatisfied with Baker & Botts' representation of her father's estate. She terminated Baker & Botts' representation of her in November 1988. Baker & Botts continues to represent Mrs. Warren and Ginther's other daughter, who is co-executrix with Rose.

Rose filed suit against Baker & Botts on June 21, 1989. Her claims against Baker & Botts consisted of the following causes of action and claims for relief:

(1) On September 27, 1976, after the loss in the first trial, Baker & Botts breached its fiduciary duty to Ginther/Warren by exploiting their vulnerable position and coercing them into signing the 1976 contract.

(2) The 1976 contract totally fails for want of consideration.

(3) By doubling its fee under the 1976 contract, Baker & Botts breached the 1974 contract.

(4) Baker & Botts grossly overcharged for expenses allegedly incurred in connection with the lawsuits, specifically $60,000 paid to Mann, $25,000 paid to Solomon Casseb, and $10,000 paid to Robert O'Conor.

(5) Baker & Botts' above-enumerated actions violated section 17.46(a) of the Deceptive Trade Practices Act (DTPA)[2] from September 27, 1976 to the present.

(6) Baker & Botts' above-enumerated actions were unconscionable in violation of section 17.50 of the DTPA.[3]

(7) Baker & Botts breached its fiduciary duty by negligently handling the legal matters entrusted to it by Ginther/Warren and by the estate of Ginther in general, by:

(a) failing to include proper parties in lawsuits;

(b) failing to take appropriate post-judgment measures to recover money due its clients;

(c) undertaking and knowingly continuing legal representation of clients whose interests were adverse and failing to properly apprise clients of such conflicts of interest;

(d) taking advantage of the confidence reposed in them by their clients because of the fiduciary relationship;

(e) failing to take proper actions to collect money owed by TransAmerican Natural Gas Corporation both before and after the death of Wilbur Ginther;

(f) failing to disclose material facts to Rose and Ginther that would have apprised them of the fact that the 1976 contract was invalid and a breach of Baker & Botts' fiduciary duty; and

(g) overcharging on fees and expenses.

(8) Throughout its representation of Ginther, Baker & Botts continually breached its fiduciary duty by failing to apprise Ginther of facts that would have led him to the conclusion that the 1976 contract was void and invalid, and that its representation of him was negligent and caused harm to him. Baker & Botts also continued to conceal the same facts from Rose.

Rose sought to recover half of the fees paid by Ginther to Baker & Botts, a return of 25% of the Alexander Lease, treble damages under the DTPA, punitive damages, and prejudgment and postjudgment interest.

**2.** Section 17.46(a), (b)(23) provides:

(a) False, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful....

(b) Except as provided in Subsection (d) of this section, the term "false, misleading, or deceptive acts or practices" includes, but is not limited to, the following acts: ...

(23) the failure to disclose information concerning *goods or services* which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed....

Tex.Bus. & Com.Code Ann. § 17.46(a), (b)(23) (Vernon 1987).

**3.** Section 17.50 provides:

(a) A consumer may maintain an action where any of the following constitute a producing cause of actual damages: ...

(3) any unconscionable action or course of action by any person....

Tex.Bus. & Com.Code Ann. § 17.50(a)(3) (Vernon 1987).

Baker & Botts moved for summary judgment, contending that:

(1) The breach of the 1974 contract claim, the failure of the 1976 contract for want of consideration claim, and the breach of fiduciary duty and DTPA claims based on the 1976 contract were barred by the two and four-year statutes of limitations because the claims accrued on September 27, 1976, and suit was filed in 1989.

(2) The DTPA claim for overcharging on expenses (relating to Mann, Casseb, and O'Conor) was barred by the two-year statute of limitations under the DTPA because the cause of action accrued in 1985 or 1986, and suit was filed in 1989.

(3) The claim for negligent performance of legal services was barred by the two-year statute of limitations because any alleged negligence or malpractice must have occurred before Ginther's death in November 1985, which ended the attorney-client relationship between him and Baker & Botts.

Rose moved for partial summary judgment, contending that the 1974 and 1976 contracts were unambiguous and that the 1976 contract was void for failure of consideration. She also responded to Baker & Botts' motion for summary judgment by arguing that (1) the attorney-client relationship was not terminated by the client's death where the attorney was hired under an express contract, (2) the statute of limitations is tolled during the attorney-client relationship, and she did not terminate the relationship until November 1988, and (3) the discovery rule applied to the facts of her case, and she could not have discovered the improprieties, breaches, and negligence of Baker & Botts until October 13, 1987.

The trial court granted Baker & Botts summary judgment on (1) all causes of action relating to the 1976 contract, including breach of fiduciary duty, breach of contract, violation of the DTPA, and failure of contract for want of consideration, and (2) all causes of action, including the overcharging claims, malpractice, breach of fiduciary duty, and negligence based on the relationship between Baker & Botts and Ginther prior to his death, finding that all causes of action were barred by the statute of limitations. The trial court severed any causes of action based on the relationship between Baker & Botts and the Ginther estate; these are not part of this appeal. The trial court denied Rose's motion for partial summary judgment.

Rose presents two points of error for review by this Court. In her first point of error, Rose contends that the trial court erred in granting the motion for summary judgment, and in her second point of error, she asserts that the court erred in denying her motion for partial summary judgment.

■ In reviewing the granting of a motion for summary judgment, this Court will consider all evidence favorable to the nonmovant as true. *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex.1986); *Goldberg v. United States Shoe Corp.*, 775 S.W.2d 751, 752 (Tex.App.—Houston [1st Dist.] 1989, writ denied). Every reasonable inference will be indulged in favor of the nonmovant, and any reasonable doubt will be resolved in her favor. *Continental Casing Corp. v. Samedan Oil Corp.*, 751 S.W.2d 499, 501 (Tex.1988); *Goldberg*, 775 S.W.2d at 752. Summary judgment is proper for a defendant if it conclusively establishes all elements of its affirmative defense as a matter of law. *Munoz v. Gulf Oil Co.*, 693 S.W.2d 372, 373 (Tex.1984). The movant must show there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *MMP, Ltd.*, 710 S.W.2d at 60; *Goldberg*, 775 S.W.2d at 752.

■ When a defendant moves for summary judgment on the basis of limitations, it assumes the burden of showing as a matter of law that the suit was barred by limitations. *Delgado v. Burns*, 656 S.W.2d 428, 429 (Tex.1983); *Zale Corp. v. Rosenbaum*, 520 S.W.2d 889, 891 (Tex.1975). The defendant must prove when the cause of action accrued and must negate the discovery rule by proving as a matter of law that there is no genuine issue of fact about when the plaintiff discovered or should have discovered the nature of the injury. *Burns v. Thomas*, 786 S.W.2d 266, 267 (Tex.1990); *Weaver v. Witt*, 561 S.W.2d

792, 794 (Tex.1977); *Krueger v. Gol,* 787 S.W.2d 138, 140 (Tex.App.—Houston [14th Dist.] 1990, writ denied). Only when a case proceeds to trial on the merits does the burden shift to the plaintiff to plead and prove the requirements of the discovery rule. *Woods v. William M. Mercer, Inc.,* 769 S.W.2d 515, 515 (Tex.1988).

■ Generally, a cause of action accrues when facts come into existence which authorize a claimant to seek a judicial remedy. *Robinson v. Weaver,* 550 S.W.2d 18, 19 (Tex.1977). The discovery rule is an exception to the general rule of accrual. *Id.; Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 351 (Tex.1990). It is a judicially constructed test that is used to determine when a plaintiff's cause of action accrued. *Moreno,* 787 S.W.2d at 351. When applied, the rule tolls the running of the statute of limitations until the plaintiff discovers, or through the exercise of reasonable care and diligence should discover, the nature of his injury. *Id.* The Texas Supreme Court has applied the discovery rule to a limited number of cases, *id.,* including legal malpractice, DTPA violations, fraud, false credit reporting, and permanent land damage claims. *See Burns,* 786 S.W.2d at 267 (the legislature wrote the discovery rule into the DTPA); *Willis v. Maverick,* 760 S.W.2d 642, 646 (Tex.1988) (discovery rule applies in legal malpractice cases); *Bayouth v. Lion Oil Co.,* 671 S.W.2d 867, 868 (Tex.1984) (action for permanent damages to land accrues upon discovery of first actionable injury); *Kelley v. Rinkle,* 532 S.W.2d 947, 949 (Tex.1976) (discovery rule applies to false credit reporting); *Quinn v. Press,* 135 Tex. 60, 64, 140 S.W.2d 438, 440 (1940) (discovery rule applies in cases of fraud). The discovery rule has been limited to matters properly characterized as inherently undiscoverable. *Johnson v. Abbey,* 737 S.W.2d 68, 69 (Tex. App.—Houston [14th Dist.] 1987, no writ).

■ We examine the summary judgment evidence to determine if Baker & Botts proved when the causes of action accrued and negated the discovery rule, if applicable. When counter-motions for summary judgment are properly before the court when judgment is rendered, all evidence accompanying one party's motion is to be considered in deciding the other party's motion and vice versa. *Seaman v. Seaman,* 686 S.W.2d 206, 210 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.).

In interrogatories, Rose was asked to state every fact that supported her allegation that, by doubling its fee, Baker & Botts breached the 1974 contract. She responded on December 14, 1989:

> The contract of 10/16/74 assigned a 20% interest in all settlement proceeds and benefits of the lawsuit. The contract specifically states that "[t]hese presently assigned interests shall be the only fee to be paid your firms for the services rendered and to be rendered," but in breach of the contract, Defendants [Baker & Botts] doubled their fee.

It is clear from her response to an earlier interrogatory, and from the wording of the 1976 contract itself, which was attached to Rose's response to Baker & Botts' motion for summary judgment, that the fee doubling occurred in the 1976 contract. According to Phillips' affidavit, attached to the Baker & Botts' response to Rose's motion for partial summary judgment, the 1976 contract was signed in September 1976. This fact is not disputed by Rose.

■ An action for damages for breach of a written contract accrues when the breach occurs, *Jackson v. J.R. Neatherlin Corp.,* 557 S.W.2d 327, 329 (Tex.Civ.App.—Houston [1st Dist.] 1977, writ ref'd n.r.e.), or when the claimant has notice of facts sufficient to place him on notice of the breach. *Lone Star Steel Co. v. Scott,* 759 S.W.2d 144, 153–54 (Tex.App.—Texarkana 1988, writ denied).

■ Accepting the nonmovant's, Rose's, answers to interrogatories as true, the 1974 contract was breached when the 1976 contract was signed, thereby doubling the fee paid to Baker & Botts. The doubling of the fee is apparent on the face of the 1976 document that was signed by Ginther. Accordingly, the breach of the 1974 contract occurred in 1976, and the cause of action accrued in 1976. Baker & Botts proved that the breach of contract action

accrued in 1976, and, as a matter of law, the discovery rule is inapplicable to this cause of action. *See, e.g., Gifford v. Bank of the Southwest,* 712 S.W.2d 182, 184 (Tex.App.—Houston [14th Dist.] 1986, no writ) (statute of limitations began when appellant knew bailee bank lost will in 1974, not in 1982 when bank told her will found); *Otis v. Scientific Atlanta, Inc.,* 612 S.W.2d 665, 666 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.) (plaintiffs knew of their injury and the cause and limitations started running on that date, not on the date they discovered the identity of the defendant). The trial court did not err in finding that the statute of limitations had run on Rose's breach of contract claim.

In interrogatories, Rose was also asked to state every fact supporting her allegation that the 1976 contract totally failed for want of consideration. She answered:

> Nothing was promised to be done under the 9/27/76 contract that was not promised to be done under the contract of 10/16/74.
>
> The contract of 10/16/74 assigned a 20% interest in all settlement proceeds and benefits of the lawsuit. The contract specifically states that "[t]hese presently assigned interests shall be the only fee to be paid your firms for the services rendered and to be rendered."

Accepting the nonmovant's, Rose's, answer as true, the failure of consideration occurred when the 1976 contract was signed. The facts supporting a claim of failure of consideration came into effect, and a cause of action accrued, in 1976. *See Whatley v. National Bank of Commerce,* 555 S.W.2d 500, 506 (Tex.Civ.App.—Dallas 1977, no writ) (limitations for rescission based on failure of consideration does not begin to run until failure of consideration occurs). Baker & Botts proved that the failure of consideration claim accrued in 1976, and, as a matter of law, the discovery rule is inapplicable to this cause of action. The trial court did not err in finding that the statute of limitations had run on Rose's failure of consideration claim.

■ In her response to interrogatories, Rose stated that the following facts supported her allegation that Baker & Botts acted in violation of its fiduciary duty:

> Defendants doubled their fee and there was no consideration of the second contract in that they did not promise to do anything they had not promised to do under the first contract. Mr. Ginther was untrained in law and solely reliant on the advice given by his attorneys. Other facts may be revealed during discovery.

According to her answer, Baker & Botts' breach of fiduciary duty occurred in September 1976 when the second fee contract was signed. The facts Rose alleges in support of her claim of breach of fiduciary duty came into effect, and a cause of action accrued, in 1976. There is no summary judgment evidence on later discovered facts that supports her cause of action, and, therefore, no genuine issue of fact about when she (or her father) discovered or should have discovered the nature of the injury. Accordingly, Baker & Botts proved that the breach of fiduciary duty action accrued in 1976. The trial court did not err in finding that the statute of limitations had run on Rose's breach of fiduciary duty claim.

■ In response to interrogatories, Rose answered that the following constituted violations of the DTPA:

> The contract of 9/27/76 was in violation of the Deceptive Trade Practices Act. Overcharging was also in violation of the DTPA.
>
> . . . .
>
> There was nothing promised to be done under the 9/27/76 contract that was not promised to be done under the 10/16/74 contract.

As with all of her causes of action, except those relating to the overcharging of expenses, Rose bases her DTPA claim on the 1976 and 1974 contracts and services and fees described therein. We conclude, as we have with respect to her other causes of action, that the facts supporting it came into existence in 1976 and that Baker & Botts proved the DTPA action, with the exception of the claim relating to expense overcharging, accrued in 1976. The trial

court did not err in finding that the statute of limitations had run on Rose's DTPA claim, except as discussed below.

In her affidavit in support of her response to Baker & Botts' summary judgment motion, Rose stated she "recently discovered," prior to an October 13, 1987 meeting with Baker & Botts, that Baker & Botts had paid $25,000 from the Ginther/Warren escrow account [4] to Solomon Casseb. She was rebuffed by Baker & Botts in her efforts to learn why the fee was paid. A Baker & Botts file memo dated August 9, 1988 indicates that the Casseb fee was paid on February 14, 1985, nine months before Ginther's death.

In her answers to interrogatories, Rose stated:

After the trial work was completed, Lawrence Mann billed $20,000.00 in 1985 and $40,000.00 in 1986 for expenses that were unexplained and unitemized. The agreement was that expenses would be paid as billed as was done up until 1985. Plaintiff [Rose] has not received documents requested to be produced so we cannot address other expenses at this time.

In a April 11, 1985 memorandum from Mann to Phillips, Mann stated that the fee and expenses on the Taub bankruptcy action would be apportioned as follows: (1) Baker & Botts would pay itself for all outstanding expenses, approximating $6,000; (2) Baker & Botts would pay itself an additional $83,375 fee; (3) Mann would be paid a $40,000 fee; and (4) Mann would bill the clients directly for expenses.

 It is undisputed that in 1986, Mann billed the Ginther estate for $80,000 for travel expenses accumulated over the long years of representation. In his deposition, Mann admitted that certain ledgers of his firm showed approximately $7,000 of travel expenses for 1974 through 1980 had been billed previously to Ginther and paid. He stated he was unable to locate any record of expenses supporting the $80,000 billed in

1986, but said he had never billed more than once for the same item of expense.

We find that material issues of fact exist concerning the allegations of overcharging for expenses. Rose, in her capacity as co-executrix, may have paid for expenses previously reimbursed by her father. She may not have discovered this until October 1987; she filed suit in June 1989. Baker & Botts failed to negate the discovery rule by proving as a matter of law that there was no genuine issue of fact about when Rose discovered or should have discovered any possible overcharging of expenses and, therefore, did not prove the statute of limitations had run with respect to her claim of expense overcharging. The trial court erred in granting summary judgment with respect to the overcharging of expenses.

We further note that, in the summary judgment, the trial judge found "claims of overcharging of expenses in the amount of $95,000" were barred by the statute of limitations. We are unable to find in the record before us any evidence to support this amount.

We sustain Rose's point of error to the extent of causes of action pertaining to the expense overcharging only, and reverse and remand these causes of action to the trial court for further proceedings. We affirm the remainder of the summary judgment for Baker & Botts. *See Arnold v. National County Mut. Fire Ins. Co.,* 725 S.W.2d 165, 168 (Tex.1987).

In her second point of error, Rose contends that the trial court incorrectly denied her motion for partial summary judgment because the 1976 contract was void for failure of consideration and because both the 1974 contract and the 1976 contract were unambiguous. We have already found that the trial court correctly held that Rose's cause of action based on failure of consideration for the 1976 contract was time barred as a matter of law.

4. According to Baker & Botts, when the first distribution of the judgment collected from Taub was planned, the escrow account was set up through the accounting department of Baker & Botts. In connection with the proceedings in the reopened Ginther/Warren bankruptcy cases, Baker & Botts made representations to the trustee that it was holding $250,000 in escrow to pay bankruptcy creditors.

We overrule point of error two.

We reverse the summary judgment with respect to the causes of action relating to the overcharging of expenses and remand those causes of action to the trial court for proceedings consistent with this opinion. We affirm the denial of Rose's motion for partial summary judgment.