**John BOWE and Nancy Bowe, Appellants,**

v.

**GENERAL MOTORS CORPORATION/PONTIAC DIVISION and John Wiesner Buick Pontiac–GMC, Inc., Appellees.**

**No. 01–91–00682–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

May 7, 1992.

Rehearing Denied June 11, 1992.

Nancy E. Conlin, James R. Moriarty, Houston, for appellants.

Bernardo S. Garza, Houston, for appellees.

Before SAM BASS, COHEN and WILSON, JJ.

## OPINION

SAM BASS, Justice.

This is an appeal from a summary judgment. Appellants, John and Nancy Bowe, sued General Motors Corporation (GM) and John Wiesner Buick Pontiac–GMC (Wiesner), alleging violations of the Deceptive Trade Practices Act (DTPA). TEX.BUS. & COM.CODE ANN. § 17.41 (Vernon 1987). They claimed that both Wiesner and GM failed to properly repair their car. They also alleged that GM failed to build their car in a good and workmanlike manner. GM and Wiesner raised two grounds in their motion for summary judgment: (1) that suit was barred by a disclaimer of warranties in the sales contract for the purchase of the car; and (2) that suit was barred by the statute of limitations. The trial court granted summary judgment without stating the ground or grounds upon which it was based.

We reverse the judgment and remand for a trial on the merits.

Mr. Bowe's statement, attached to his interrogatory answers, indicates that on June 22, 1987, he and his wife bought a 1987 Pontiac 6000 from Wiesner for $11,500. The car was a demonstrator model and had 2618 miles on it.

Soon after they purchased the car, the Bowes began having problems with it. In July 1987, while on a family vacation, the car overheated twice. They noticed the air conditioner was not cooling properly in September 1987. By October of that year, the air conditioner completely quit working. Because the weather was getting cooler, they did not immediately take the car to have the air conditioner repaired.

On February 10, 1988, Mr. Bowe took the car to a local Exxon station to have the air conditioner checked, and freon was added. The air conditioner still did not work, so on March 14, 1988, they took the car to the Wiesner service department. After Wiesner's mechanics worked on the car, the air conditioner worked sometimes, going on and off unpredictably. Thus, on March 16, 1988, the Bowes returned the car to Wiesner. Wiesner's service representative told them that they could not find anything wrong with the car.

In early April of 1988, Mrs. Bowe again took the car to Wiesner because of the air conditioner. The service representative told her she was having a "heat flash," and that nothing was wrong with the car. The air conditioner continued to go on and off, so the Bowes went back to Wiesner on April 25, 1988. This time, Wiesner said the problem was the pressure switch and assured the Bowes that it would be fixed. However, when they picked the car up, the air conditioner still did not work properly.

On April 27, 1988, after growing frustrated with Wiesner, Mr. Bowe took his car to an Exxon station. No one at the station could determine the cause of the problem. Finally, on May 20, 1988, they returned the car to Wiesner. Wiesner taped two wires together, replaced another pressure switch, and said the car was repaired. The air conditioner continued to work unpredictably.

In November of 1988, the brakes began squealing and the engine overheated again. On January 24, 1989, the Bowes took the car to an Exxon station because they had noticed an oil leak. Exxon took the car to Wiesner, who replaced a gasket and a tensioner belt. On February 17, 1989, the car suddenly died. Exxon replaced the fuel pump, the timer, and the gas screen.

In March of 1989, the air conditioner would not come on. Mr. Bowe took the car to Wiesner on March 23. They replaced another pressure switch. They also replaced the front rotors on the brakes. Yet, on April 6, 1989, Mr. Bowe was back at Wiesner. This time the horn was blowing without warning, the engine was hesitating and backfiring, and the air conditioner was not working. Wiesner replaced the cooling fan. The service representative told Mr. Bowe that the car had a bad electrical system, and it is impossible to find the cause of an electrical system problem.

The Bowes' problems with the car continued for the remainder of 1989 and throughout 1990. The cruise control stopped working, the air conditioner did not function properly, the engine overheated at slow speeds, the car vibrated, the battery and alternator had to be replaced, the horn blew unexpectedly, and they finally learned that the engine block was cracked.

The Bowes instituted suit under the DTPA on May 22, 1990. They alleged that Wiesner and GM had breached the implied warranty to repair the car in a good and workmanlike manner. They further alleged that GM failed to build the car in a good and workmanlike manner. The trial court granted summary judgment in favor of Wiesner and GM.

In their first point of error, the Bowes claim that the statute of limitations did not bar their claim against GM and Wiesner, because the cause of action accrued within the two years prior to filing suit. The Bowes assert that the discovery rule applies in this case.[1]

In reviewing the granting of a motion for summary judgment, this Court will consider all evidence favorable to the nonmovants, the Bowes, as true. *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex.1986). Every reasonable inference will be indulged in favor of the nonmovants, and any reasonable doubt will be resolved in their favor. *Continental Casing Corp. v. Samedan Oil Corp.*, 751 S.W.2d 499, 501 (Tex.1988).

---

1. Section 17.565 of the Texas Business and Commerce Code provides, in pertinent part:

   All actions brought under this subchapter must be commenced within two years after the date on which the false, misleading, or deceptive act or practice occurred or *within*

   *two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice.*
   Tex.Bus. & Com.Code Ann. § 17.565 (Vernon 1987) (emphasis added).

Summary judgment is proper for the defendant if it conclusively establishes all elements of its affirmative defense as a matter of law. *Munoz v. Gulf Oil Co.*, 693 S.W.2d 372, 373 (Tex.1984). The movant must show there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *MMP, Ltd.*, 710 S.W.2d at 60.

When a defendant moves for summary judgment on the basis of limitations, it assumes the burden of showing as a matter of law that the suit was barred by limitations. *Delgado v. Burns*, 656 S.W.2d 428, 429 (Tex.1983); *Rose v. Baker & Botts*, 816 S.W.2d 805, 809 (Tex.App.—Houston [1st Dist.] 1991, writ denied). The defendant must prove when the cause of action accrued and must negate the discovery rule by proving as a matter of law that there is no genuine issue of fact about when the plaintiff discovered or should have discovered the nature of the injury. *Burns v. Thomas*, 786 S.W.2d 266, 267 (Tex.1990); *Rose*, 816 S.W.2d at 809. Only when a case proceeds to trial on the merits does the burden shift to the plaintiff to plead and prove the requirements of the discovery rule. *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 515 (Tex.1988); *Rose*, 816 S.W.2d at 810.

Generally, a cause of action accrues when facts come into existence that authorize a claimant to seek a judicial remedy. *Robinson v. Weaver*, 550 S.W.2d 18, 19 (Tex.1977). The discovery rule is an exception to the general rule of accrual. *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex.1990). When applied, the rule tolls the running of the statute of limitations until the plaintiff discovers, or through the exercise of reasonable care and diligence should discover, the nature of his injury. *Id.*

GM and Wiesner did not prove when the Bowes' cause of action accrued, nor did they negate the discovery rule by proving there is no fact issue concerning the discovery of the injury. GM and Wiesner contended in their motion for summary judgment that the Bowes should have discovered their injuries in the summer and fall of 1987 when they first had difficulties with the engine overheating and the air conditioner malfunctioning. However, it cannot be said, as a matter of law, that these problems alone give rise to a cause of action for failure to build the car in a good and workmanlike manner. Moreover, in 1987 it would have been impossible for the Bowes to discover GM's and Wiesner's failure to repair the car, because the first repairs were not made until early 1988.

GM and Wiesner further argue that the Bowes knew about their injury by May 20, 1988. At that point, they had taken their car to Wiesner five times to have the air conditioner repaired. They apparently assert that the Bowes, as a matter of law, should have discovered the failure to repair the air conditioner after five failed attempts. They cite no authority for this proposition. However, they claimed at oral argument that the Bowes made a concession to that effect in their answers to interrogatories. After carefully reviewing the transcript, we cannot find that the Bowes made any such admission.

Further, GM and Wiesner claim the Bowes discovered the failure to repair when they became "frustrated with Wiesner" and took the car elsewhere for repairs on April 27, 1988. For this proposition, they rely on *Gonzalez v. City of Harlingen*, 814 S.W.2d 109 (Tex.App.—Corpus Christi 1991, writ denied). *Gonzalez* involved the major expansion of a home and the reconstruction of the roof of the house. On the date work was completed, the owner told the contractor that he was not satisfied with the work. Almost four months later, the owner found many problems associated with the construction. The court held that the date the homeowner became dissatisfied with the contractor's work was the day he discovered or should have discovered the act giving rise to the cause of action. *Id.* at 113–14.

The *Gonzalez* case is distinguishable from the case before us. When the homeowner in *Gonzalez* complained of his dissatisfaction, all of the acts giving rise to his cause of action had already occurred. No further work was done on the house

following his complaint. However, in this case, many of the repairs about which the Bowes would later complain had not even begun. When the Bowes took their car to an Exxon station on April 27, 1988, they thought their only problem was the air conditioner. Except for the one incident of overheating, which occurred in the middle of the summer, they had seen no indications of engine trouble. It cannot be said as a matter of law that on April 27, 1988, all of the acts giving rise to their cause of action for failure to repair had occurred. They could not have been aware of the act giving rise to the failure to repair the engine, because no repairs on the engine had been made.

Because there are genuine issues of fact concerning the date upon which the Bowes should have discovered or actually did discover their injuries, it was improper for the trial court to grant summary judgment based on the statute of limitations. The first point of error is sustained.

■ In their second point of error, the Bowes assert that Wiesner's disclaimer of warranties in the sales contract for the purchase of the car did not bar their claim against GM and Wiesner. Because the disclaimer was Wiesner's alone, as admitted in the motion for summary judgment, it does not affect any claims against GM. The disclaimer reads:

> Any warranties on the products sold hereby are those made by the manufacturer. The seller, John Wiesner, Inc. hereby expressly disclaims all warranties, whether express or implied, including any implied warranty of merchantability or fitness for a particular purpose, and John Wiesner, Inc. neither assumes nor authorizes any other person to assume for it any liability in connection with the *sale of the product.*

(Emphasis added.)

■ The Bowes alleged that Wiesner breached the implied warranty that repair services be done in a good and workmanlike manner. The repair services provided by Wiesner were the *sale of services,* while the disclaimer in the purchase contract disclaims only those warranties connected with the *sale of goods.* Thus, this disclaimer does not disclaim warranties involved in the repair services that Wiesner sold to the Bowes after they had purchased the car.

Further, the supreme court has held warranties that repair services be done in a good and workmanlike manner cannot be disclaimed. "Consistent with the trend in recent consumer legislation and sound public policy, we further hold that the implied warranty that repair or modification services of existing tangible goods or property will be performed in a good and workmanlike manner may not be waived or disclaimed." *Melody Home Mfg. Co. v. Barnes,* 741 S.W.2d 349, 355 (Tex.1987).

Because the disclaimer did not waive Wiesner's implied warranty to repair the Bowes' car in a good and workmanlike manner, summary judgment based on the disclaimer was improper. We sustain the second point of error.

The judgment of the trial court is reversed and the cause is remanded for trial on the merits.