Kenda STEEL, Individually and on Behalf of Her Minor Children, Garrison Steel, Samantha Gail Steel, and as Next Friend of Gregory Steel, a Minor Child, Now Deceased, and on Behalf of The Estate of Jeffrey Steel, Appellants,

v.

RHONE POULENC, INC., Appellee.

No. 01–96–00063–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 13, 1997.

Rehearing Overruled Jan. 2, 1998.

Published in Part Pursuant to Tex. R. App. P. 90.

notices included in the record or briefs.

**614**

John L. Barnes, Houston, for Appellants.

Robert L. Lebouef, Angleton, for Appellee.

Before HEDGES, ANDELL and MIRABAL, JJ.

**OPINION**

MIRABAL, Justice.

This is an appeal from a summary judgment in favor of defendant in a wrongful death action. We reverse.

Plaintiffs [1] sued defendant Rhone Poulenc, Inc. (Rhone) along with other defendants.[2] Plaintiffs' original petition, filed on September 21, 1992, alleged that the exposure of Jeffrey Steel (the husband) to hazardous chemicals while he worked for Rhone from November 1986 to early 1990 caused a malignant brain tumor. According to the petition, the husband's brain tumor was diagnosed on or about October 6, 1989, but the cause of the injury was not discovered until on or after September 19, 1990. The husband died on March 28, 1994, as a result of the brain tumor.

On March 11, 1993, plaintiffs filed their third amended petition, alleging that Gregory Steel (the six-year-old son), died as result of leukemia, which was caused by exposure to residue of chemical or product hazards attached to the husband's clothing and "unknowingly and inadvertently" brought home. The trial court entered a "Second Agreed Case Management Order" on April 28, 1993, regarding the claims involving the son's death. The order required plaintiffs to detail the exact chemicals to which the husband claimed the son was exposed, the frequency and duration of exposure experienced by the son, the defendant responsible for the exposure, the method of exposure, and an affidavit from a qualified medical doctor with the opinion that the exposure caused the son's leukemia. In response to the order, plaintiffs provided the affidavit of the husband, a list of chemicals and their origin, and a letter from Dr. Daniel Teitelbaum, M.D., P.C., which opined:

I believe that there is a greater probability than not that the radioactive and organic materials to which Mr. Steel was exposed

---

1. Plaintiffs/Appellants are Kenda Steel, suing (1) individually, (2) as next friend of her two minor children and one deceased child, and (3) on behalf of the estate of her deceased husband, Jeffrey Steel.

2. It appears plaintiffs' claims against Rhone were for *punitive* wrongful death damages. It is apparently uncontested that plaintiffs' claims for *compensatory* damages from Rhone are barred by the exclusive remedy provision of the Texas Worker's Compensation Act, TEX. LAB.CODE ANN. § 408.001(a) (Vernon 1996).

in the course of Jeff's work at the Rhone–Poulenc site were the sole cause or contributed substantially to the causation of Mr. Steel's anaplastic oligodendroglioma and to Gregory's leukemia.

All defendants moved for summary judgment on October 7, 1994, asserting: (1) plaintiffs could not prove medical causation as to the husband's brain tumor or the son's leukemia; and (2) plaintiffs' claims against all defendants relating to the husband's injury were barred by the statute of limitations. In support of their motion, defendants offered the affidavit of Stanley M. Pier, Ph.D, an environmental toxicologist. In his affidavit, Pier states:

> Plaintiffs basically speculate that for some unspecified period of time, Jeffrey and Gregory Steel may have come into contact with a small amount of unknown chemicals, which plaintiffs allege may have caused their diseases, while at the same time selectively ignoring all other factors in cancer causation such as alcohol, tobacco, drugs and diet, for example. Essentially, plaintiffs attempt to take an unknown exposure to unknown quantities of unknown chemicals and opine causation with a reasonable medical certainty. This flaunts all processes of scientific reasoning.

. . .

> Before a physician/scientist/plaintiff can state that a known carcinogen can cause or has caused a given cancer, the plaintiff/physician/scientist must have a definition of the substance involved and the characteristics of exposure ... Absent chemical or exposure information, no physician/scientist/plaintiff can possibly establish a medical link within a reasonable certainty, between a carcinogenic agent and a particular cancer.

In response to defendants' motion for summary judgment, plaintiffs provided the affidavit of Dr. Daniel Teitelbaum, dated January 20, 1995; the affidavit of Kenda Steel; and a newspaper article dated September 19, 1990, from the Brazosport Facts linking chemicals from work sites to cancer. On February 28, 1995, the trial court granted summary judgment in favor of all defendants except Rhone. The judgment stated: (1) all of plaintiffs' claims by and through the husband were barred by limitations; and (2) all of plaintiffs' claims by and through the son failed for want of medical causation.

Rhone again moved for summary judgment, asserting in relevant part: (1) the punitive wrongful death damages claim was derivative of the husband's own claims which were barred by statute of limitations; (2) claims for the son's death were time-barred by the statute of limitations because plaintiffs did not serve the claims on Rhone within two years of the son's death; and (3) there is no competent summary judgment evidence of exposure or causation which raises an issue of fact as to the cause of the son's death.

Plaintiffs filed a response to Rhone's amended motion for summary judgment. In support of their response, plaintiffs attached their original response to defendants' original motion for summary judgment and exhibits; a second affidavit of Dr. Daniel Teitelbaum, dated July 6, 1995; and other documents.

The defendants who had been granted summary judgment moved for severance. The trial court granted severance on June 22, 1995. An unsigned entry in the record indicates on August 15, 1995, the trial court rescinded the severance order and granted Rhone's motion for summary judgment. However, there is no signed order rescinding the severance order. The final judgment incorporated all defendants and granted summary judgment in favor of all defendants on the grounds that "the Court finds that plaintiffs' claims against defendants are barred by limitations." The judgment, further states:

> Plaintiffs, ... in open court, do hereby waive and specifically forego any appeal or right of appeal as to Defendants [granted summary judgment on February 28, 1995] and agree that any time limit within which such an appeal could have been taken has lapsed and, therefore any such appeal is barred by law.

Consequently, plaintiffs appeal only their claims against Rhone.

A movant for summary judgment has the burden of showing that there is no genuine

issue of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *Id.* Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Id.*

Once a movant has established a right to summary judgment, the burden shifts to the nonmovant. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979). The nonmovant must then respond to the motion for summary judgment and present to the trial court any issues that would preclude summary judgment. *Id.*

To prevail as a movant for summary judgment, a defendant must either (1) disprove at least one element of the plaintiff's theory of recovery, or (2) plead and conclusively establish each essential element of an affirmative defense to rebut the plaintiff's cause of action. *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984); *Marchal v. Webb,* 859 S.W.2d 408, 412 (Tex.App.—Houston [1st Dist.] 1993, writ denied).

In their first point of error, plaintiffs assert the trial court erred in granting summary judgment based on the running of the statute of limitations because the discovery rule tolled the statute of limitations on the husband's claims, and a genuine issue of material fact exists as to the date of the discovery of their injuries.

Rhone replies that under the doctrine of collateral estoppel, the summary judgment in favor of Rhone's codefendants, based on the husband's claims being barred by the statute of limitations, precludes plaintiffs from challenging the summary judgment granted in favor of Rhone on that issue.

### Collateral Estoppel

■ Collateral estoppel, or issue preclusion, precludes the relitigation of identical issues of facts or law that were actually litigated and essential to the judgment in a prior suit. Once an actually litigated and essential issue is determined, that issue is conclusive in a subsequent action between the same parties. *Van Dyke v. Boswell, O'Toole, Davis & Pickering,* 697 S.W.2d 381, 384 (Tex.1985). Collateral estoppel is an affirmative defense that must be pled, or it is waived. *Sysco Food Servs., Inc. v. Trapnell,* 890 S.W.2d 796, 802 (Tex.1994); *Voskamp v. Arnoldy* 749 S.W.2d 113, 118 (Tex.App.—Houston [1st Dist.] 1987, writ denied).

■ Rhone did not plead collateral estoppel in the trial court, but instead raises it for the first time on appeal. Rhone argues collateral estoppel is timely raised on appeal because the defense only arose once the district court granted summary judgment in favor of Rhone's codefendants, and then granted a final summary judgment.

■ The trial court granted the codefendants' summary judgment on February 28, 1995, and severed the cause from plaintiffs' claims against Rhone on June 22, 1995. A severance divides a lawsuit into two or more independent causes of action, each of which results in a separate, final, and enforceable judgment. *Juhl v. Airington,* 936 S.W.2d 640, 641 (Tex.1996); *Kansas Univ. Endowment Ass'n v. King,* 162 Tex. 599, 350 S.W.2d 11, 19 (1961); *Cannon v. ICO Tubular Servs., Inc.,* 905 S.W.2d 380, 390 (Tex. App.—Houston [1st Dist.] 1995, no writ). When a severance order takes effect, the appellate timetable runs from the signing date of the order that made the judgment severed "final" and appealable. *Martinez v. Humble Sand & Gravel, Inc.,* 875 S.W.2d 311, 314 (Tex.1994). When no motion for new trial is filed, the trial court has plenary power to modify, vacate, correct, or reform the judgment only for 30 days after the judgment is signed. Tex.R. Civ. P. 329b(d).

In this case, the appellate time table began to run on June 22, 1995. Plaintiffs did not file a motion for new trial after the first summary judgment or severance order. Thus, the trial court's plenary power to rescind the severance order and modify the first judgment ended on July 22, 1995. The court's unsigned entry dated August 15, stating the severance order was rescinded, was ineffective; the summary judgment remained final as to Rhone's codefendants. *See* Tex.R. Civ. P. 329b(a), (d), (f); *Levit v. Adams,* 841

S.W.2d 478, 487 (Tex.App.—Houston [1st Dist.] 1992), *rev'd on other grounds,* 850 S.W.2d 469 (Tex.1993). Rhone had the opportunity to raise the defense of collateral estoppel in the trial court. Rhone has not raised the issue of collateral estoppel timely by raising it for the first time on appeal. Accordingly, we reach the merits of plaintiffs' points of error with regard to the husband.

### Discovery Rule

 When a defendant moves for summary judgment on the basis of limitations, and the plaintiff raises the discovery rule, the defendant must negate the discovery rule by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered or should have discovered the nature of the injury. *Burns v. Thomas,* 786 S.W.2d 266, 267 (Tex.1990); *Jampole v. Matthews,* 857 S.W.2d 57, 63 (Tex.App.—Houston [1st Dist.] 1993, no writ); *Rose v. Baker & Botts,* 816 S.W.2d 805, 809 (Tex. App.—Houston [1st Dist.] 1991, writ denied). Only when a case proceeds to trial on the merits does the burden shift to the plaintiff to plead and prove the requirements of the discovery rule. *Woods v. William M. Mercer, Inc.,* 769 S.W.2d 515, 517 (Tex.1988).

 The discovery rule is an exception to the general rule that a cause of action accrues when facts come into existence authorizing a claimant to seek a judicial remedy. S.V. v. R.V., 933 S.W.2d 1, 4 (Tex.1996); *Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 918 S.W.2d 453, 455 (1994). When applied, the rule tolls the running of the statute of limitations until the plaintiff discovers the injury, or acquires knowledge of facts which, in the exercise of reasonable care and diligence, would lead to the discovery of the wrongful act and resulting injury. S.V., 933 S.W.2d at 4; *Rose,* 816 S.W.2d at 810. Under the discovery rule, limitations begin to run when the fact of the injury is known, not when the alleged wrongdoers are identified. *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 351 (Tex.1990); *Leeds v. Cooley,* 702 S.W.2d 213, 215 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.) (patients cause of action for malpractice accrued when she discovered her condition, not when anesthesi-ologist was discovered to have played a part in the cause).

 Whether the discovery rule applies to a given context is a question of law, and we review all applicable evidence. S.V., 933 S.W.2d at 8. The rule applies to those cases in which the alleged wrongful act and resulting injury were "inherently undiscoverable" at the time they occurred but may be "objectively verified." *Id.* at 6. "Inherently undiscoverable" requires that the existence of the injury is not ordinarily discoverable, despite the plaintiff's due diligence. *Computer Assocs.,* 918 S.W.2d at 456; *see, e.g., Nelson v. Krusen,* 678 S.W.2d 918, 923 (Tex. 1984) (malpractice in gene-screening for muscular dystrophy undiscoverable until child showed symptoms); *Gaddis v. Smith,* 417 S.W.2d 577, 578 (Tex.1967) (discovery of foreign object left in body virtually impossible to discover within limitations); *Hays v. Hall,* 488 S.W.2d 412, 414 (Tex.1972) (negligent performance of vasectomy not discoverable until patient's wife becomes pregnant or patient shown to be fertile). The requirement of inherent undiscoverability recognizes the discovery rule's applicability only in circumstances where "it is difficult for the injured party to learn of the negligent act or omission." *Computer Assoc.,* 918 S.W.2d at 457. Facts upon which liability are asserted are "objectively verifiable" when the plaintiff demonstrates direct, physical evidence. *Compare Gaddis,* 417 S.W.2d at 578 (presence of sponge in plaintiff's body and how it got there were undisputable) *with Robinson v. Weaver,* 550 S.W.2d 18, 21–22 (Tex.1977) (negligent diagnosis is subject to proof only by expert hindsight, and therefore discovery rule does not apply).

 Rhone argues the husband's injury was not inherently undiscoverable because the husband knew of the nature of his injury on October 6, 1989, when he was diagnosed with the brain tumor and knew he had previously worked with chemicals. Thus, Rhone asserts the statute of limitations was tolled only until October 6, 1989, at the latest. Plaintiffs assert the statute of limitations was tolled until September 19, 1990 when Rhonda Steel read a newspaper article about the link

between hazardous chemical exposure and cancer.

Rhone analogizes this case to *Seibert v. General Motors Corp.*, 853 S.W.2d 773, 776 (Tex.App.—Houston [14th Dist.] 1993, no writ). In *Seibert*, the plaintiff suffered a spinal injury in an accident while riding as a passenger in a car manufactured by the defendant. *Seibert*, 853 S.W.2d at 775. The plaintiff argued the statute of limitations on his cause of action was tolled by the discovery rule because, although the accident occurred more than two years before suit was filed, he did not learn a defect in the car's seatbelt caused his injury until he saw a news report on the car several years after the incident. *Id.* The court held that the discovery rule applies only to those situations in which a claimant was unable to know of his injury at the time of actual accrual. *Id.* The court reasoned that because the plaintiff in *Seibert* knew of his injury at the time of the accident, the injury was not inherently undiscoverable, and the burden was on the plaintiff to determine whether he should file suit against those who may have been responsible for the injury. *Id.* at 777.

■ Unlike the automobile accident that caused the *Seibert* plaintiff's injury, in occupational diseases there is no overt act that causes the injury. Consequently, the discovery rule is often applied in such cases. Although a worker may know of the dangers of his occupation, there is no one action that puts the worker on notice that he may be developing an occupational disease. *Strickland v. Johns–Manville Int'l Corp.*, 461 F.Supp. 215, 217 (S.D.Tex.1978); *Martinez v. Humble Sand & Gravel, Inc.*, 940 S.W.2d 139, 143–45 (Tex.App.—El Paso 1996, no writ). A firm diagnosis of the occupational disease undoubtedly starts the statute of limitations running. *Martinez*, 940 S.W.2d at 145. But, short of an actual diagnosis, the plaintiff cannot engage in blameless ignorance of the disease. *Id.; see also Fibreboard Corp. v. Pool*, 813 S.W.2d 658, 679 (Tex.App.—Texarkana 1991, writ denied). In *Pool*, the plaintiff repeatedly sought diagnosis of asbestos for his symptoms, but did not receive it. *Pool*, 813 S.W.2d at 678. The court held the statute of limitations did not

begin to run until the positive diagnosis of silicosis alerted the plaintiff of his cause of action. *Id.*

Unlike the diagnosis of asbestosis or silicosis, the diagnosis of cancer is not always linked specifically to an occupational hazard. Rhone was required to negate the discovery rule, but Rhone did not provide any summary judgment evidence showing what methods of discovery were available to the husband, such that through due diligence he could have been alerted that working with chemicals could cause cancer. Discovery of a malignant brain tumor does not equate to discovery of an actionable injury or of a negligent act or omission. We conclude that the husband's "injury" was inherently undiscoverable at the time of the cancer diagnosis.

■ For the discovery rule to apply, the husband's injury must also be "objectively verifiable." S.V., 933 S.W.2d at 6. While expert testimony alone, which amounts to a "swearing match between experts over opinions," does not suffice, "recognized expert opinion on a particular subject [could] be so near consensus that, in conjunction with objective evidence," it could provide the verification required. *Id.* at 15. Evidence such as studies, or other objective evidence, linking exposure to hazardous chemicals to cancer, provides the objective evidence such that the husband's claim may be objectively verified.

■ We conclude that the husband's claim was "inherently undiscoverable" and "objectively verifiable." Therefore, the discovery rule applies. We must now consider whether the evidence raised a fact issue as to when the husband knew or should reasonably have known of the claimed injury. See S.V., 933 S.W.2d at 8. If the husband, using due diligence, could have known or should have known of the circumstances which led to the cause of his brain tumor on October 6, 1989, the statute of limitations would begin to run on that date, and the suit will be barred.

In this case, although the onset of the tumor occurred sometime before actual diagnosis, the husband did not learn of the brain tumor until October 6, 1989, the date of diagnosis. Thus, the earliest time at which the husband could have learned the nature of

his injury was October 6, 1989. Kenda Steel's affidavit states that when her husband was diagnosed with the brain tumor, no medical care provider, or anyone else, suggested any connection between her husband's illness and his work. She did not understand "the cause nor how or why Jeff was ill." She had no idea about the nature and origin of the tumor until September 19, 1990, when she read a newspaper article about the link between hazardous chemical exposure and cancer. Rhone offers no evidence rebutting plaintiffs' evidence that they could not have known the origin of the husband's tumor until September 19, 1990. In support of its summary judgment, Rhone asserts workplace exposure of its employees was closely monitored in accordance with 10 C.F.R. § 20.1003 and 20.1201(a)(1)(I), and the husband's exposure was significantly below these limits. However, Rhone offers no summary judgment evidence to link (1) its monitoring of employees for exposure, to (2) the husband's knowledge that this exposure may have been the cause of his brain tumor. Rhone did not negate the discovery rule by proving as a matter of law when the husband should have discovered the nature of his actionable injury. Thus, a material fact issue remained as to when the husband should have reasonably discovered the nature of his injury.

Accordingly, we sustain point of error one.

The discussion of the remaining points of error does not meet the criteria for publication, TEX.R.APP. P. 47, and is thus ordered not published. We reverse the summary judgment and remand the case to the trial court.