Opinion issued November 13, 2003
     











In The
Court of Appeals
For The
First District of Texas




NO. 01-02-01207-CV




JOEL WOLF, Appellant

V.

JANE WOLF, Appellee




On Appeal from County Court at Law 2
Harris County, Texas
Trial Court Cause No. 767493




MEMORANDUM OPINION

          Appellant, Joel Wolf (“Son”), challenges the trial court’s judgment in favor of
appellee, his mother, Jane Wolf (“Mother”), on her breach of contract claim. In two
issues, Son contends that the trial court erred in entering judgment for Mother in the
amount of $15,195 because: (1) the trial court erred in refusing to set aside the
judgment because the statute of limitations precluded Mother’s breach of contract
claim, and (2) the amount the trial court awarded to Mother should have been reduced
by one half. We affirm as reformed.
Mother’s Testimony
          Mother testified that Son approached Mother in the fall of 1992 and asked her
to take out student loans for his benefit. Mother agreed to take out loans under her
name, on the condition that Son would assume responsibility for the repayment of the
loans once he graduated. Mother got four loans for Son totaling $16,000. Each time
she got a loan, she gave him the loan proceeds and reaffirmed her condition that he
“pay it back” after he graduated from college and obtained employment. Son
graduated from college in May 1996, and the loans became due in February 1997. 
At that time, Son informed Mother that he did not intend to make any payments on
the loans. Mother began to pay the loans as the payments came due, but she
continued to attempt to persuade her son to take over the loan payments. Mother
testified that she wrote letters to her son and called him monthly to discuss the loans,
but Son refused to speak to her about the loans and some of her letters were returned,
unopened. 
          Son’s father and Mother underwent an acrimonious divorce during this time,
which Mother testified further added to the difficulties between Mother and Son. 
However, on Mother’s Day, May 11, 1997, Mother asked Son to sign a letter which
read, “I intend to pay off the balance of the loan ($ » 16,000.000) to Sallie Mae.” 
Mother testified that Son voluntarily signed the letter and that she placed her
signature under his because she believed the letter needed a witness. After the letter
was signed, however, Son still made no payments. In summer 2000, Mother, in order
to avoid suing Son, called Son with an offer to split the loan payments, saying that
she would pay one half of the total loan amount if he would agree to pay the other one
half. Her agreement did not indicate strict periodic payments. Mother testified that
Son agreed. Mother received five checks from Son between July 2000 and October
2000 totaling $675. Mother testified that, after October 2000 when the payments
stopped, Mother called Son, and he again informed her that he did not intend to pay
the loan payments. 
Son’s Testimony
          Son testified that, although he signed the letter in May 1997, he had done so
as a result of physical intimidation by his mother’s boyfriend. Further, according to
Son, although he gave Mother several checks during 2000, he never intended for
Mother to construe the payments as repayments of the loan. Son testified that the
checks he gave Mother were a result of his desire “to help her out financially.” He
stated that the amounts of the checks bore no relation to the amount due each month
for the loan payments. Further, Son denied having a conversation with Mother about
dividing the loan repayment in one half. Son contended that the loan proceeds
Mother gave him were a gift and that he never indicated to Mother that he considered
it his responsibility to repay the loans. 
          At the time of trial, Son had returned to school and the loans were deferred. 
Mother testified that she had not made any payments on the loans since Son’s last
check to her in October 2000. The trial court rendered judgment in favor of Mother
for $15,195, stating that the award was the sum of $16,000 less the $805 that Son
paid on the accounts.



Analysis
          There appear to be three separate agreements: (1) the first agreement occurred
before Son graduated from college wherein Son agreed to repay the loans upon
graduation; (2) the second agreement, signed on May 11, 1997 by both Mother and
Son, confirmed the earlier agreement wherein Son agreed to pay the loans in full; and
(3) the third agreement, in the Summer of 2000, involved an oral agreement, where
Son agreed to pay one half of the loan balance. Son’s testimony, however, indicated
that he acknowledged only the second of the three agreements. 
          In two issues, Son contends that the trial court erred in denying his motion to
set aside the judgment, or alternatively to modify the judgment because Mother’s suit
based on the May 11, 1997 letter was barred by the four-year statute of limitations,
and Mother’s only viable cause of action, not barred by the statute of limitations, was
on the third agreement she made with Son. Accordingly, under the terms of the third
agreement, the trial court should have reduced the amount awarded to Mother by one
half. 
Standard of Review
          On an appeal from a judgment rendered in a bench trial, we review the court’s
findings of fact in the same manner as jury findings. See Catalina v. Blasdel, 881
S.W.2d 295, 297 (Tex. 1994). When, as here, the trial court made no findings of fact, 
we must assume that it made all findings in support of its judgment. Pharo v.
Chambers County, Tex., 922 S.W.2d 945, 948 (Tex. 1996). The trial court’s judment
will not be set aside if there is any evidence of a probative nature to support it, and
this Court may not substitute its findings of fact for those of the trial court if there is
evidence in the record to sustain the trial court’s findings. Ray v. Farmers’ State
Bank of Hart, 576 S.W.2d 607, 609 (Tex. 1979); Glockzin v. Rhea, 760 S.W.2d 665,
666 (Tex. App.—Houston [1st Dist.] 1988, writ denied). 
          We review the trial court’s conclusions of law de novo. See In re Humphreys,
880 S.W.2d 402, 404 (Tex. 1994); In re Moers, 104 S.W.3d 609, 611 (Tex.
App.—Houston [1st Dist.] 2003, no pet.). As an appellate court, we must
independently evaluate conclusions of law to determine their correctness and will
uphold them on appeal if the judgment can be sustained on any legal theory supported
by the evidence. Moers, 104 S.W.3d at 611. 
Statute of Limitations 
          In issue one, Son argues that the statute of limitations precludes Mother from
recovering on either of the first two agreements. A four-year statute of limitations
applies to breach of contract actions. Tex. Civ. Prac. & Rem. Code § 16.051
(Vernon 1997); Stine v. Stewart, 80 S.W.3d 586, 592 (Tex. 2002). The limitations
period begins to run when the cause of action accrues, and the date of accrual is a
question of law. See Moreno v. Sterling Drug, Inc., 787 S.W.2d 348, 351 (Tex.
1990). We review questions of law de novo, without deference to the trial court’s
conclusions. State v. Heal, 917 S.W.2d 6, 9 (Tex. 1996).
          An action for damages for breach of a contract accrues when the breach occurs. 
 Moreno, 787 S.W.2d at 351; Jackson v. J.R. Neatherlin Corp., 557 S.W.2d 327, 329
(Tex. Civ. App.—Houston [1st Dist.] 1977, writ ref’d n.r.e.). A breach occurs when
the claimant has notice of facts sufficient to place him on notice of the breach. Rose
v. Baker & Botts, 816 S.W.2d 805, 810 (Tex. App.—Houston [1st Dist.] 1991, writ
denied) (finding that a breach of an original agreement occurred when the parties
signed a subsequent contract, with differing terms, addressing the same matter). 
Further, a breach of contract occurs when a party fails or refuses to do something that
it has promised to do. Townewest Homeowners Ass’n, Inc. v. Warner Communication
Inc., 826 S.W.2d 638, 640 (Tex. App.—Houston [14th Dist.] 1992, no writ). 
          Here, the pertinent dates are as follows:



Date

Description



Before February 1997

1st agreement: Son pays balance of
loans when loans became due



May 11, 1997

2nd agreement: signed agreement that
Son pays balance of the loans



Summer 2000

3rd agreement: Mother and Son agree
to split loan in one half



February 25, 2002

Mother filed petition




 
          Mother filed her suit against Son on February 25, 2002. On appeal, Son
contends that Mother’s breach of contract claim accrued in February 1997, when the
loans became due, because that was when Son first repudiated his agreement to pay
the loans himself.


 Son further contends that the record shows he made no payments
on the loan. Son argues that he never intended to pay the loans and that he signed the
second, May 1997, agreement only to prevent further harassment. Son argues that,
because he repudiated the agreement in February 1997, the statute of limitations on
any agreement he had with Mother expired in February 2001.
          Alternatively, Son argues that the only claim Mother may have timely brought
would be based on the third agreement under which Mother alleged each agreed to
pay one half of the loan. Based on this third agreement, Son argues that Mother’s
award should therefore be reduced by one half. 
First and Second Agreements 
          The first agreement between Mother and Son occurred prior to February 1997
when Mother alleged that Son had agreed to pay back the loans due six months after
his graduation in May 1996. Son told Mother he had no intention of repaying the
loans; therefore, when the loans became due and Son made no payments, Mother was
aware of the first breach. Because Mother did not file suit until February 25, 2002,
five years after breach of the first agreement, the breach of contract claim for the 
agreement was untimely filed.  See Rose, 816 S.W.2d at 810.
          The second agreement occurred on May 11, 1997. Again, because Son failed
to make any payments or reassurances that payments would be made, Mother had
notice that Son did not intend to repay the loans. Mother did not file suit more than
four years after Son failed to make any payments on the second agreement; therefore,
the breach of contract claim for the second agreement was also untimely filed. The
statute of limitations precludes recovery on the breach of contract claims on the first
two agreements as a matter of law. Accordingly, we sustain Son’s first issue.
Third Agreement



          In issue two, Son argues that, if not barred by the statute of limitations, the
third agreement limited Mother’s recovery to one half of the loan proceeds. In the
third agreement, Mother and Son orally agreed that Son would pay one half of the
loan proceeds. From July 2000 to October 2000, Son made five payments to Mother. 
Son, however, denied that he had agreed to repay one half of the loan and he denied
that his payments were loan repayments. We hold that the evidence was sufficient
to support the trial court’s implicit finding that there was a third agreement. See Ray,
576 S.W.2d at 609. 
          The third agreement, established during the Summer of 2000, falls within the
four-year statute of limitations. Considering that the third agreement was the only
agreement not barred by limitations and that the third agreement provided that Son
was only responsible for repayment of one half of the loan proceeds, Mother should
have only been awarded one half of the loan debt rather than the full amount. 
          We sustain issue two and modify the trial court’s judgment to reflect that
Mother is to recover $7,325—one half of the original loan amount less the monies he
has already paid—from Son.


 Conclusion
          We reform the judgment of the trial court, and, as reformed, affirm. 


                                                             George C. Hanks, Jr.
                                                             Justice

Panel consists of Justices Taft, Jennings, and Hanks.