Graciela Anita SANCHEZ

v.

Steve T. HASTINGS, Guy H. Allison, Alberto R. Huerta, and Allison & Huerta, P.C.

No. 04–93–00714–CV.

Court of Appeals of Texas, San Antonio.

June 22, 1994.

Rehearing Denied July 29, 1994.

Anita J. Anderson, Law Offices of Anita J. Anderson, San Antonio, for appellant.

Terry Topham, Michael P. Warren, Davidson & Troilo, P.C., San Antonio, for appellees.

Before BUTTS, RICKHOFF and HARDBERGER, JJ.

## OPINION

HARDBERGER, Justice.

Graciela Sanchez appeals from a summary judgment granted in favor of Steve T. Hastings, Guy H. Allison, Alberto Huerta and Allison & Huerta, P.C. in a legal malpractice lawsuit. The summary judgment was based on limitations. Sanchez argues that a material issue of fact exists on whether she filed her lawsuit within two years of the date she discovered or should have discovered through the exercise of reasonable diligence the underlying facts of the alleged malpractice. We affirm the summary judgment.

### I. Facts

Steve T. Hastings, on behalf of the law firm of Allison & Huerta, contracted to represent Graciela Sanchez, the Estate of Carlos Garcia and the minor Gina Sanchez, in her wrongful death and survival action related to the death of her husband, Carlos Sanchez. The suit arose from an on the job accident that occurred on June 8, 1984, while Mr. Sanchez was employed by Cedar Creek Fabricators, Inc. Cedar Creek carried workers' compensation insurance. The Law Offices of Guy Allison filed the wrongful death and survival action arising from the death of Carlos Sanchez in 1985 against several parties. The employer was not sued. Hastings also represented the interests of Reliance Insurance Company, the employer's workers compensation insurance carrier, in its subrogation action.

The basis for the subsequent legal malpractice act is that Hastings (1) should have sued the employer for gross negligence and (2) that there was a conflict of interest in his representing the insurance company on the subrogation claim and (3) he did not tell his client that he was representing the workers' compensation carrier. This opinion does not

address or attempt to answer whether these charges are valid. The sole issue is when Mrs. Sanchez knew, or should have known, that she had a potential cause of action against her lawyer.

Attorney Darrel Dullnig was appointed guardian ad litem for the minor in July 1989. Dullnig filed a gross negligence action on behalf of the minor and against the employer, Cedar Creek Fabricators, Inc. It is undisputed that the statute of limitations had run by then as to any cause of action for gross negligence which Graciela Sanchez had against Cedar Creek Fabricators, Inc.

Hastings then filed a motion to be designated lead counsel for Graciela Sanchez as next friend of the minor Gina Sanchez. The employer, Cedar Creek Fabricators, filed a motion to disqualify Hastings for a conflict of interest. The motion to designate lead counsel was heard at the same time as the settlement hearing of the plaintiffs with defendant Bantam Hoist Company on May 1, 1990. Appellant Sanchez was present for the entire proceeding and testified in English. During this hearing Hastings was criticized by attorneys Dullnig and Carlos for not suing the employer and having a conflict of interest representing the compensation insurance carrier. It is undisputed that these criticisms were made in front of Mrs. Sanchez. The issue is the effect of these statements on the later legal malpractice case.

Two years and five months after the May 1, 1990, hearing (August 28, 1992), Graciela Sanchez filed this lawsuit against Steve Hastings, Guy Allison, Alberto Huerta, and Allison & Huerta for legal malpractice. Specifically, Sanchez alleged that Hastings, while representing her in the third party action against Bantam Hoist Company, Inc. and other defendants, failed to bring a claim against Cedar Creek Fabricators, Inc. or to inform her of her right to sue Cedar Creek for gross negligence. In addition, Sanchez alleges that appellees failed to divulge their representation of the subrogation interest of Reliance Insurance Company or of the potential conflict of interest. The trial court granted appellees summary judgment based upon limitations.

In her sole point of error, Sanchez contends that the trial court erred in granting summary judgment based on limitations because issues of material fact exist as to when Sanchez discovered or should have discovered her cause of action against appellees.

## II. Standard of Review

When a defendant moves for summary judgment on the basis of limitations, it assumes the burden of showing as a matter of law that the suit was barred by limitations. *Delgado v. Burns*, 656 S.W.2d 428, 429 (Tex. 1983); *Rose v. Baker & Botts*, 816 S.W.2d 805, 809 (Tex.App.—Houston [1st Dist.] 1991, writ denied). A defendant seeking summary judgment on limitations must prove when the cause of action accrued and must negate the discovery rule by proving as a matter of law that there is no genuine issue of fact about when the plaintiff discovered or should have discovered the nature of the injury. *Burns v. Thomas*, 786 S.W.2d 266, 267 (Tex.1990). Thus appellees bear the burden of negating the discovery rule as a matter of law. In deciding whether a disputed material fact issue exists, this court will take as true all evidence favoring the non-movant. All reasonable inferences and doubts will be resolved in the non-movants favor. *Nixon v. Mr. Property Management Co., Inc.*, 690 S.W.2d 546, 548–49 (Tex.1985).

## III. Discovery Rule

Legal malpractice actions are governed by the two-year statute of limitations for torts. *Willis v. Maverick*, 760 S.W.2d 642, 644 (Tex.1988); TEX.CIV.PRAC. & REM. CODE ANN. § 16.003 (Vernon 1986). The statute of limitations for legal malpractice actions does not begin to run until the claimant discovers or should have discovered through the exercise of reasonable care and diligence the facts establishing the elements of her cause of action. *Willis*, 760 S.W.2d at 646. The discovery rule is an objective test. Discovery occurs when a plaintiff has knowledge of such facts as would cause a reasonably prudent person to make an inquiry that would lead to discovery of the cause of action. *White v. Bond*, 362 S.W.2d 295 (Tex. 1962). Knowledge of such facts is in the law

equivalent to knowledge of the cause of action. *Id.*

■ In their motion for summary judgment appellees argued that Sanchez knew of the facts giving rise to her cause of action no later than May 1, 1990, the date of the hearing on the settlement with Bantam Hoist and the motion to substitute counsel in the minor's gross negligence action against Cedar Creek Fabricators. Sanchez responded that she did not discover her cause of action until sometime in October of 1990. We believe, as did the trial court, that the evidence conclusively establishes that on May 1, 1990, Graciela Sanchez discovered or should have discovered through the exercise of reasonable diligence the facts establishing her cause of action.

## IV. Notice of Statute of Limitations

On May 1, 1990, a hearing was held concerning the $300,000 settlement between Sanchez and Bantam Hoist. The court also heard Hastings' motion to substitute as lead counsel in the minor's action for gross negligence against the employer. Graciela Sanchez attended the entire hearing and testified in English. Seven attorneys representing different parties to the litigation were at this hearing. During the hearing John Carlos, the employer's attorney, made the following statement:

> The statute of limitations had run *so that Mrs. Sanchez could not sue Cedar Creek;* only the minor that Mr. Dullnig was appointed to represent could.

During this same hearing, Hastings told the court that there might be "a possible gross negligence case against the employer."

Sanchez says this did not give her notice of her possible cause of action against Hastings because she did not understand the phrase "statute of limitations." We agree that Sanchez probably did not know the technical meaning of "statute of limitations." However, the effect of the statute of limitations was made clear to Sanchez during the hearing. She cannot sue Cedar Creek Fabricators. The only thing that Sanchez may not fully understand is why she cannot bring the suit. She knows something called a statute of limi-

tation is keeping her from the suit. Reasonable care and diligence, using the reasonable person standard would be to ask "why?".

The summary judgment record makes clear that after the May 1, 1990, hearing Sanchez knew or should have known that (1) there may be a case for gross negligence against the employer; (2) that she cannot bring it; (3) but only her daughter can.

Sanchez could have asked about this at the time of the hearing. Seven lawyers and a judge were present. Even if she did not ask then, she had two years to inquire why her daughter could bring suit against the employer, but she could not. Her daughter's case was continuing and eventually settled. Surely a reasonable person would ask: "Why not me?". The affidavits make it clear that attorney Dullnig advised her directly that she had a legal malpractice suit in October of 1990. But Sanchez waited one year and ten months after this conversation to do anything. The very fact that she sought out Dullnig, who had been openly critical of her lawyer, indicate the May 1, 1990 hearing had raised a degree of suspicion that all was not well. Hastings also got blistered in that hearing for having a conflict of interest.

## V. Notice of Conflict of Interest

Both attorney Dullnig and attorney Carlos thought Hastings was guilty of a conflict of interest and both said so at the May 1, 1990, hearing before Sanchez. Dullnig was more restrained in his attack on Hastings than was Carlos. But both made it clear what they were talking about. Sanchez was told that Hastings had represented both Reliance and the Sanchez family for about four years. She was told that Reliance was being paid out of the settlement with Bantam Hoist and that Hastings was getting attorney's fees from Reliance. Dullnig told the court that Hastings was guilty of a "possible conflict." Carlos went further. He said: "there is a drastic definite conflict." And then went on to explain why. One does not have to be a lawyer to understand these are not compliments. Under *Willis v. Maverick, supra,* Sanchez has a duty to ask "why?". Even if Sanchez did not have a complete understand-

ing, she had two years in which to clarify the reasons for these criticisms and file suit.

Sanchez relies on *Jampole v. Matthews*, 857 S.W.2d 57 (Tex.App.—Houston [1st Dist.] 1993, writ denied). *Jampole* is the strongest case for the appellants, but distinguishable. The Houston court first sets out the standard in these cases, in which we are in agreement:

> When applied, the [discovery] rule tolls the statute of limitations until the plaintiff discovers, or through the exercise of reasonable care and diligence should discover, the nature of its injury.

*Id.* at 63. Every case must apply its fact pattern to the above law. *Jampole* involved the attorneys raising their fees shortly before the case settled. Suit was brought more than two years after this and the discovery rule was called into issue. The defendant attorney said discovery was proven because there had been an inter-family discussion questioning the lawyers' conduct more than two years before the suit was filed. It was the defendant lawyer's position that discussion started the statute to running. The court disagreed and explained that this family discussion did not prove they knew, or should have discovered, a breach of fiduciary duty owed to them by their attorneys. *Id.* at 64.

Comparing the facts of *Jampole* with the present case, we cannot agree that an inter-family discussion of wrongdoing is the same as a court hearing when two attorneys accuse Sanchez's attorneys of wrongdoing in front of her. Sanchez was specifically told that (1) there was a conflict and (2) she could not bring suit because the statute of limitations had run. Therefore, we do not feel that the *Jampole* facts are controlling in this case, even though we concur completely in the *Jampole* law.

### VI. Fraudulent Concealment

■ Sanchez also argues that the summary judgment should be reversed under a fraudulent concealment theory. Fraudulent concealment tolls or suspends the statute of limitations until the time the plaintiff learns of facts giving rise to her cause of action or should learn of the facts in the exercise of reasonable diligence. *Arabian Shield Development Co. v. Hunt*, 808 S.W.2d 577, 584–85 (Tex.App.—Dallas 1991, writ denied). The Texas Supreme Court sets forth the rule for fraudulent concealment as follows:

> The estoppel effect of fraudulent concealment ends when a party learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry, which, if pursued, would lead to discovery of the concealed cause of action. Knowledge of such facts is in law equivalent to the cause of action.

*Borderlon v. Peck*, 661 S.W.2d 907, 909 (Tex. 1983). This is the same standard as the one set forth in *Willis v. Maverick*, *supra*, for the discovery rule. In the context of this summary judgment, there is no effective difference between Sanchez' allegation of fraudulent concealment on the part of Steve Hastings, Guy Allison and Allison & Huerta and the application of the discovery rule. *See also Arabian Shield Development Co. v. Hunt*, 808 S.W.2d at 585. As previously discussed, the facts which Sanchez learned at the May 1, 1990 hearing are dispositive and foreclose her lawsuit on the basis of limitations under either the discovery rule or a fraudulent concealment theory.

We hold that the summary judgment evidence in this case establishes that Graciela Sanchez discovered or should have discovered through the exercise of reasonable diligence the facts establishing the elements of her cause of action more than two years before she filed her lawsuit. Therefore, we overrule appellant's sole point of error.

The judgment is affirmed.

RICKHOFF, Justice, concurring.

The facts of this case are sufficiently set forth in the opinion, with the following additions.

Graciela Anita Sanchez completed her education in the second month of the ninth grade and has worked for minimum wage. She lost her husband when he was burned to death after a hoist in the rear of his truck contacted an electrical wire. The record is unclear as to when she first retained a lawyer; her affidavit says only that she first met Henry

B. Gonzalez, Jr. when he came to her home at the time of her husband's funeral "with fried chicken and a contract."

More than two months after the May 1, 1990 hearing, Mrs. Sanchez was present at an informal hearing held on July 20, 1990. While it is not entirely clear from the record, it appears that she was seated in the back of the court room along with Gonzalez. When her child's ad litem, Darrell S. Dullnig, attempted to tell Sanchez, in her words, to contact him when "all this was over,"

> Henry B. Gonzalez, Jr. was there and got very angry and told Mr. Dullnig to 'shut up.' Gonzalez was so made the bailiff said he would not allow that in the courthouse, but I did not know what they were fighting about.

Mr. Dullnig's affidavit, along with Mrs. Sanchez's, was submitted with the plaintiff's response to the defendant's motion for summary judgment. Dullnig claims that because the hearing was "at the bench" and Mrs. Sanchez was in the audience, he attempted to tell her that:

> . . . when all this was over she should come talk to me regarding her case. Henry B. Gonzalez [, Jr.] told Ms. Sanchez then not to listen to anything I had to say, to not talk to me; that I was trying to take money away from her little girl.

Gonzalez did not appear before the court, presumably because he was the referring attorney.

The record is unclear as to when Allison and Huerta ended its representation of Graciela Sanchez. According to Sanchez's affidavit, the last correspondence she received from them was a February 13, 1991 letter signed by Steve T. Hastings, which accompanied the annuity contract.

None of these facts are controverted by the summary judgment evidence. Included in that record is the appellee's summary judgment evidence, which consists of an affidavit from Steve T. Hastings, and the statement of facts from the May 1, 1990 hearing. Insofar as Sanchez is concerned, Hastings' affidavit says that she "appeared and testified" at the hearing, and understood what was said.

The record of the May 1, 1990 hearing reveals nomenclature that would be familiar only to an attorney ("50/50 divider," "intervenor," "gross negligence under coverage B," "statute of limitations," and so on). Much of the discussion concerned the subject of attorney's fees. In any event, Sanchez's only contribution consisted of repeating "yes sir" each time she was asked about the settlement and whether she had previously received $741.08 per month in compensation.

I agree with the majority, however, that the question is not whether Sanchez understood the technical meaning of terms such as "statute of limitations," but whether the summary judgment evidence establishes either (1) that she knew she had a cause of action against Hastings, or (2) that a reasonable person would have made inquiries that would lead to discovery of a cause of action.

While medical malpractice is now treated quite differently, relating the facts to another professional context, what if one were home ill and: (1) a doctor appeared at one's door with soup and an offer of treatment; (2) later, during a discussion about one's upcoming operation seven doctors engaged in a complex and disagreeable discussion; and (3) two months later, just before the operation, the doctor who visited the home interrupts a colleague with "shut up" and then tells the patient the other doctor is just trying to get his or her money. I submit most people would seek a second opinion.

I am not persuaded the record of the May 1, 1990 hearing, standing alone, establishes that a reasonable person would have made inquiries that would lead to discovery of a cause of action. However, the remaining summary judgment evidence, in particular the uncontroverted portions of the Sanchez and Dullnig affidavits, sufficiently establishes that a reasonable person would have discovered the existence of a cause of action against the defendants. The courtroom dialogue wherein Gonzalez told Dullnig to "shut up" and told Sanchez not to listen to Dullnig because he "was trying to take money away from her little girl," was sufficient—when considered with the remaining summary judgment evidence—to cause a reasonable person to make inquiries that would lead to

discovery of a cause of action for legal malpractice.

For this reason, I concur in the judgment.