**RODESSA RESOURCES, INC. and Louisiana Land and Exploration Company, Appellants,**

v.

**ARCADIA EXPLORATION AND PRODUCTION COMPANY, Appellee.**

No. 06–98–00119–CV.

Court of Appeals of Texas, Texarkana.

Submitted Oct. 7, 1999.

Decided Nov. 2, 1999.

John D. Sloan, Jr., Sloan & Price, P.C., Longview, Chad Dean, Shumate & Dean, Henderson, R. Clement Dunn, Attorney at Law, Longview, for appellant.

F. Franklin Honea, Winstead, Sechrest, Minick, Dallas, Ron Adkison, Wellborn, Houston, Adkison, Mann, Henderson, for appellee.

Before CORNELIUS, C.J., GRANT, J., and CHADICK, Justice, Supreme Court of Texas, Retired, Sitting by Assignment.

## OPINION

Opinion by Justice GRANT.

Rodessa Resources, Inc. and Louisiana Land and Exploration Company[1] appeal from a judgment based on a jury verdict. The case involves their breach of contract and associated fraud claims against Arcadia Exploration and Production Company. Louisiana Land and Exploration Company was the original owner of the interest at issue, but later sold its interest to Rodessa.

Rodessa contends that the judgment should be reversed and seeks either a remand for a new trial or rendition based on remaining jury answers. Rodessa con-

1. Because Rodessa and L.L. & E. are aligned on appeal, unless it is necessary to distinguish between them for clarity, we will hereafter refer to them collectively as Rodessa.

tends that the court erred by rendering judgment based upon the jury's answer to question number thirteen (limitations), that the court erred by submitting that question to the jury, that there is insufficient or no evidence to support the jury's answer to that question, and that the court erred by refusing to include requested questions and instructions on the subject of limitations as part of the charge.

Rodessa prevailed on all jury questions presented except for the limitations question. In answer to that question, the jury found that Rodessa should have discovered, in the exercise of reasonable diligence, the acts on March 17, 1989, about which it complains. Suit was filed in 1995. As a result of that answer, the trial court concluded that the entire action was barred by limitations and rendered a take nothing judgment in favor of Arcadia.

The evidence at trial shows that Arcadia and L.L. & E. were investors in an oil and gas venture. Arcadia was the operator, while L.L. & E. held an overriding royalty in the leases at issue, with a contractual option to convert the royalty to a working interest within sixty days after being notified that the drilling/production costs had been paid off. As part of that contractual agreement, Arcadia agreed to provide information in monthly statements to L.L. & E. that would, among other things, reflect when the payoff occurred. Arcadia stopped sending those statements in 1986. The well initially came in during the early 1980's as a low producer, but between 1986 and 1987 its output increased substantially. The payoff occurred in 1987.

The jury found that Arcadia breached its contract by failing to furnish written notice of the payout to L.L. & E. (question number one), that appellants had not waived their claims, that Arcadia committed fraud, and that the fraud was not waived. The jury then found substantial damages for the breach and fraud. The jury also found that Rodessa did not commit laches by failing to bring a legal action until January 1995.

The critical jury question was question number thirteen:

On what date should LL & E, in the exercise of reasonable diligence, have discovered Arcadia's failure to provide written notice of Payout of the Michael Kangerga Gas Unit Well # 1?

. . . .

ANSWER: 3–17–89

■ We first address Rodessa's argument that the issue quoted above was erroneous and that its proffered issues should have been sent to the jury instead. Rodessa argues that the issue was improperly submitted because it was ambiguous, confusing, and misleading. Thus, Rodessa argues the jury's answer may not actually reflect the date from which limitations should be applied either for fraud or for their claim of fraudulent concealment, and reversal is therefore proper.

■ In order to determine whether the question was proper, we first review the limitations requirements for the type of action brought by Rodessa. Rodessa sued based on breach of contract, fraud, and fraudulent concealment. A person must bring suit on claims for breach of contract or fraud no later than four years after the day the claims accrue. TEX. CIV. PRAC. & REM.CODE ANN. § 16.004 (Vernon 1986), § 16.051 (Vernon 1997). Generally, in a case of fraud the statute of limitations does not commence to run until the fraud is discovered or until it might have been discovered by the exercise of reasonable diligence. *Little v. Smith*, 943 S.W.2d 414, 420 (Tex.1997); *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex.1996). This is not the traditional discovery rule, which requires that the wrongful act or breach be inherently undiscoverable before the doctrine will be applied.

The Court in *S.V. v. R. V.*, 933 S.W.2d 1, 4 (Tex.1996), held that the cases in which we have deferred accrual of causes of action for limitations purposes fall into two

categories: those involving fraud and fraudulent concealment, and all others. The deferral of accrual in the latter cases is properly referred to as the discovery rule. We observe the distinction between the two categories because each is characterized by different substantive and procedural rules. *Weaver v. Witt,* 561 S.W.2d 792, 793–94 (Tex.1977); *see American Petrofina, Inc. v. Allen,* 887 S.W.2d 829 (Tex. 1994); *Woods v. William M. Mercer, Inc.,* 769 S.W.2d 515, 518 (Tex.1988).

The deferral of limitations in this context therefore acts as an application of the discovery rule, and determines when the claim accrues for the purpose of computing limitations. *Pitman v. Lightfoot,* 937 S.W.2d 496, 510 (Tex.App.-San Antonio 1996, writ denied).

■ A cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later and even if all resulting damages have not yet occurred. *Murphy v. Campbell,* 964 S.W.2d 265, 270 (Tex.1997); *S.V.,* 933 S.W.2d at 4.

■ Cases involving fraudulent concealment and fraud have deferred accrual. As pointed out in *S.V. v. R.V.,* these are not true discovery rule cases, having different reasons for the deferred accrual, but are handled in much the same fashion. Fraudulent concealment tolls or suspends the statute of limitations until the time the plaintiff learns of facts giving rise to his cause of action, or should have learned of the facts in the exercise of reasonable diligence. *Farias v. Laredo Nat'l Bank,* 985 S.W.2d 465, 471 (Tex.App.-San Antonio 1997, no pet.); *Sanchez v. Hastings,* 880 S.W.2d 471, 475 (Tex.App.-San Antonio 1994), *rev'd on other grounds,* 898 S.W.2d 287 (Tex.1995); *Arabian Shield Dev. Co. v. Hunt,* 808 S.W.2d 577, 584–85 (Tex.App.-Dallas 1991, writ denied). As our Texas Supreme Court has explained:

> The estoppel effect of fraudulent concealment ends when a party learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry, which, if pursued, would lead to discovery of the concealed cause of action. Knowledge of such facts is in law equivalent to knowledge of the cause of action.

*Borderlon v. Peck,* 661 S.W.2d 907, 909 (Tex.1983).

Thus, the limitations question that should be presented to the jury is not the date on which payout occurred or the date on which Rodessa discovered the correct date on which payout occurred. Limitations began to run not when Rodessa knew the details of the cause of action, or the level of damages, but when Rodessa had sufficient information to lead it to make further inquiry which could have led to the discovery of the concealed cause of action. The proper question is the date on which Rodessa obtained sufficient knowledge that would have required a reasonably prudent person to make inquiry that, if pursued, would lead to discovery of the concealed cause of action.

■ The limitations jury question applies directly to the fraud/fraudulent concealment claim. We thus look to determine whether the jury question was improperly given. The standard of review for alleged jury charge error is abuse of discretion. *Texas Dep't of Human Servs. v. E. B.,* 802 S.W.2d 647, 649 (Tex.1990). The trial court has broad discretion in submitting the jury charge, and it abuses that discretion only when it acts without reference to any guiding rules or principles. *See id.*

■ A party is entitled to a jury question, instruction, or definition if the issue is raised by the pleadings and the evidence. Tex.R. Civ. P. 278. After determining that an error exists, we then consider the pleadings, the evidence presented at trial, and the charge in its entirety in determining whether the error merits reversal. *Island Recreational Dev. Corp. v. Republic of Texas Sav. Ass'n,* 710 S.W.2d 551, 555 (Tex.1986). Error in the charge

is reversible only if harmful, that is, if it caused or was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment. *Id.; see* TEX.R. APP. P. 44.1(a)(1). A judgment based on a jury question that creates an ambiguous answer may be reversible. *Edwards v. Holleman,* 893 S.W.2d 115, 120 (Tex.App.-Houston [1st Dist.] 1995, writ denied).

Thus, we look to see if the trial court abused its discretion by giving this particular jury question to the jury, either because it did not ask a question using proper language or because there was no evidence to support its submission.

Rodessa argues that the question permitted the jury to make piecemeal determinations and that it cannot be determined which part of the question the jury actually answered. It argues that, under the language used in this issue, the jury could have actually answered three different questions, and found

(1) No written notice, with payout, and L.L. & E. knows or should have known payout occurred;

(2) No written notice, no payout, and L.L. & E. did not and should not have known payout occurred; or

(3) No written notice, payout occurred, and L.L. & E. did not and should not have known payout occurred.

Rodessa's argument is not persuasive. In relevant part, the question asked the jury to decide the date upon which L.L. & E., in the exercise of reasonable diligence, should have discovered Arcadia's failure to provide written notice of payout of the well. In order for the jury to answer the question "yes," the jury would have to determine that payout had occurred and that Arcadia did not provide written notice of the payout, both of which are uncontested in evidence. The remaining question, based upon those factors, is the date upon which L.L. & E., *in the exercise of reasonable diligence, should have discovered* that Arcadia was concealing the cause of action

by failing to provide written notice of the payout. The question might have been phrased more precisely, but it is adequate to ask the relevant question for purposes of fraud and fraudulent concealment.

Because the question adequately addresses the relevant issue, we cannot conclude that the trial court abused its discretion by sending it to the jury.

 Rodessa further contends that there was no or insufficient evidence to support the jury's answer to the question. When deciding a no-evidence point, in determining whether there is no evidence of probative force to support a jury's finding, we must consider all of the evidence in the record in the light most favorable to the party in whose favor the verdict has been rendered, and we must apply every reasonable inference that could be made from the evidence in that party's favor. *Merrell Dow Pharmaceuticals, Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997). In this review, we disregard all evidence and inferences to the contrary. *Burroughs Wellcome Co. v. Crye,* 907 S.W.2d 497, 499 (Tex.1995); *Best v. Ryan Auto Group, Inc.,* 786 S.W.2d 670, 671 (Tex.1990). A no-evidence point will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *Havner,* 953 S.W.2d at 711. More than a scintilla of evidence exists when the evidence supporting the finding, as a whole, rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Id.; Burroughs Wellcome Co.,* 907 S.W.2d at 499.

When considering a factual sufficiency challenge to a jury's verdict, courts of appeals must consider and weigh all of the evidence, not just that evidence which supports the verdict. *Maritime Overseas*

*Corp. v. Ellis,* 971 S.W.2d 402, 407 (Tex. 1998). A court of appeals can set aside the verdict only if it is so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and unjust. *Id.; Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). The court of appeals is not a fact finder. Accordingly, the court of appeals may not pass upon the witnesses' credibility or substitute its judgment for that of the jury, even if the evidence would clearly support a different result. *Maritime,* 971 S.W.2d at 407. If we find the evidence insufficient, we must clearly state why the jury's finding is factually insufficient or is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986).

The evidence shows that, as required by the contract, Arcadia provided L.L. & E. with payout statements which contained a cumulative balance of income and expenses through November 1986. When it ceased sending the statements, Arcadia also wrote to L.L. & E. informing the company that it believed that L.L. & E. had no right to convert the well at issue or any other well in the field. The record also reflects that, at the time Arcadia ceased sending the statements, the well was approximately $54,000 away from payoff and that during 1987 the income from the well increased by approximately twenty-fold.

Arcadia continued to make royalty payments, with attached documentation showing individual production volumes and gross and net revenue broken out for each well, including the Kangerga # 1. In January 1987, L.L. & E. hired Mark Leiserowitz to work as its accountant. He was given payout files to bring up to date, and his supervisor told him to send letters asking for updates from operators who had not been providing payout statements. On March 17, 1989, two years after payout,

Leiserowitz wrote to Arcadia pointing out that it had not provided the requisite information. Arcadia did not respond. Leiserowitz testified that he telephoned Arcadia perhaps twice before he again requested a payout statement **five years later,** on May 10, 1994, and again did not receive a response. In June 1995, Leiserowitz prepared a payout statement from the revenue information provided with the royalty checks, the operating expenses as reflected in the documents sent before 1986, and improvement expense information obtained upon request from other working interest owners. His calculations were within one month of the correct payout date.[2]

The jury found that, in the exercise of reasonable diligence, L.L. & E. should have discovered Arcadia's failure to provide written notice of payout on March 17, 1989, the date that Leiserowitz wrote a letter to Arcadia requesting that it prepare and provide the payout information. It is obvious and undisputed that Arcadia was not providing the information, and it is undisputed that L.L. & E. was in possession of information showing an extraordinary increase in the output of the well and that it knew the well was near payoff before that increase occurred. This evidence supports the jury's conclusion that L.L. & E. by that date, by exercising reasonable diligence, should have discovered the concealed cause of action.

Further, the evidence shows that the information provided L.L. & E. most of the raw data from which it could compile the payout date, which is most clearly shown by the fact that six years later it did so, using information that was in its possession in 1989. The remaining information, the cost of recompleting the well at a new pay, was readily available from the other working interest owners, which is most clearly shown by the testimony that the information was in fact obtained with

---

**2.** The record reflects that Arcadia provided a payout statement on or about November 9, 1994, informing Rodessa that the well had paid out, and that Rodessa did not make the necessary election to convert its interest during the requisite sixty-day period following that notice. Rodessa did finally attempt to elect to convert in May of 1996.

little difficulty. From this evidence, the jury could have concluded that if L.L. & E. had exercised reasonable diligence, it should have discovered Arcadia's failure to provide written notice of the payout on the date that L.L. & E. first took an affirmative act attempting to obtain the information from Arcadia.

This evidence, under the variant of the discovery rule applied in this case, provides the beginning point for the running of a four-year statute of limitations. The undisputed evidence shows that it was six years after that date before suit was filed.

In reviewing the no-evidence contention, we have considered all of the evidence in the record in the light most favorable to the party in whose favor the verdict has been rendered. After applying every reasonable inference that could be made from the evidence in that party's favor, disregarding all evidence and inferences to the contrary, we conclude that there is some evidence to support the jury's answer. *See Burroughs,* 907 S.W.2d at 499. The no-evidence contention is overruled.

We have also reviewed the evidence for factual sufficiency as required by *Maritime.* In so doing, we have considered and weighed all of the evidence, not just that evidence which supports the verdict. *Maritime Overseas Corp.,* 971 S.W.2d at 407. We find the evidence to be factually sufficient to support the jury's answer to the limitations question, and we find the verdict is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See id.; Cain,* 709 S.W.2d at 176. The contention of error is overruled.

The judgment is affirmed.