NO. 12-00-00032-CV



IN THE COURT OF APPEALS



TWELFTH COURT OF APPEALS DISTRICT


 

TYLER, TEXAS




LAGLORIA OIL AND

GAS COMPANY,
§
 APPEAL FROM THE 241ST

APPELLANT



V.
§
 JUDICIAL DISTRICT COURT OF


CARBOLINE COMPANY AND

SUN COMPANY, INC.,

APPELLEES
§
 SMITH COUNTY, TEXAS






 

 LaGloria Oil and Gas Company ("LaGloria") appeals the judgment of the trial court
following a separate jury trial on the sole issue of Appellee, Carboline Company's ("Carboline")
affirmative defense of statute of limitations. LaGloria raises four issues on appeal. We reverse and
remand for a new trial on all issues.


Background

 LaGloria owns and operates a refinery in Tyler, Texas. In 1979, while in the process of
expanding its refinery, LaGloria applied a fireproofing material known as Pyrocrete 102 to certain
structural steel, vessels, vessel skirts and pipe racks throughout the refinery. The purpose of the
fireproofing was to protect the steel and prevent its collapse in the event of a fire. The Pyrocrete 102
used by LaGloria was manufactured by Carboline.

 In August 1992, LaGloria retained Tom Kocurek ("Kocurek"), a registered professional
engineer, as project construction manager for two Hydrotreater construction projects at the refinery. 
The record reflects that Kocurek had previous experience with Pyrocrete 102. While he was a
project construction manager for Good Hope Refinery in Louisiana Kocurek found extreme
corrosion when Pyrocrete 102 was removed from the refinery vessel skirts and structural steel. The
record further reflects that based on his prior experience at Good Hope Refinery, Kocurek used a
pick axe to remove a small portion of Pyrocrete 102 from a vessel skirt at LaGloria's refinery and
discovered severe corrosion, which is the subject of this lawsuit.

 On April 13, 1995, LaGloria filed the instant lawsuit against Carboline, Sun Company
("Sun") and other defendants. Carboline and Sun (1) pled the statute of limitations as an affirmative
defense. LaGloria responded by pleading the discovery rule. Carboline and Sun filed a motion for
summary judgment claiming that the discovery rule did not apply to LaGloria's limitations defense
because LaGloria's injury was not inherently undiscoverable. LaGloria nonsuited its causes of action
governed by the two-year statute of limitations, but opposed the motion with regard to its fraud and
Deceptive Trade Practices ("DTPA") (2) claims. The trial court granted Carboline's motion as to
LaGloria's breach of implied and express warranties claims, but denied the summary judgment
motion with respect to the fraud and DTPA claims. 

 Subsequently at Carboline's request, the trial court granted a separate trial solely on the issue
of limitations, before proceeding with trial on the liability issues. (3) The trial court also permitted
Carboline to open and close. Following the close of evidence, a hearing was held on the court's
charge. The sole issue ultimately presented to the jury read as follows:


 Do you find from a preponderance of the evidence LaGloria discovered, or in the exercise of
reasonable diligence should have discovered, before April 13, 1991, the existence of corrosion that
was occurring under Pyrocrete 102 fireproofing at LaGloria's refinery in Tyler, Texas.


LaGloria timely objected to this question arguing that it "leaves out a necessary element, and that
is, that the injury suffered by LaGloria was likely - was likely caused by the wrongful act of
another." LaGloria's attorney then requested that the same question be submitted, but that the
question include the phrase "...and that the corrosion was likely caused by the wrongful act of
another" at the end. The trial court overruled LaGloria's objection, and this appeal followed.


The Discovery Rule (4)

 In its first issue, LaGloria contends that the question submitted to the jury was erroneous in
that it omitted the necessary element of whether LaGloria knew or should have known that the injury
was likely caused by the wrongful conduct of another. On the other hand, Carboline argues that
LaGloria's contention is misplaced because (1) it is based upon an improper interpretation of certain
Texas Supreme Court cases, (2) the charge, as submitted, did require a finding of a relationship
between the legal injury and the product at issue and LaGloria failed to object to the court's
description of such a relationship, and (3) the trial court's order granting a separate trial on the statute
of limitations issue makes a finding of "wrongful conduct" inappropriate.


Standard of Review

 Complaints concerning the trial court's charge are viewed in light of the record as a whole. 
See Island Recreational Dev. Corp. v. Republic of Texas Sav. Ass'n., 710 S.W.2d 551, 555 (Tex.
1986). Submission of questions to the jury is a matter within the discretion of the trial court. See
Galveston County Fair & Rodeo, Inc. v. Glover, 880 S.W.2d 112, 116 (Tex. App.- Texarkana
1994, writ denied). Thus, our standard of review is abuse of discretion. See Texas Dep't. Of
Human Servs. v. E. B., 802 S.W.2d 647, 649 (Tex. 1990). That discretion is limited, however, to
asking questions that control the disposition of the case, that are raised by the pleadings and the
evidence, and that properly submit the disputed issues. See Texas Employers Ins. Ass'n v.
Alcantara, 764 S.W.2d 865, 867 (Tex. App.- Texarkana 1989, no writ).


Charge Questions Related To The Discovery Rule

 The primary purpose of statutes of limitations is to compel the exercise of a right of action
within a reasonable time so that the opposing party has a fair opportunity to defend while witnesses
are available and the evidence is fresh in their minds. Willis v. Maverick, 760 S.W.2d 642, 644
(Tex. 1988); see also Wagner & Brown, Ltd. v. Horwood, 44 Tex. Sup. Ct. J. 1090, 2001 WL
987344, *2 (August 30, 2001), citing Computer Assocs. Int'l, Inc. v. Altai, Inc., 918 S.W.2d 453,
455 (Tex. 1996); S.V. v. R.V., 933 S.W.2d 1, 3 (Tex. 1996). It is in society's best interest to grant
repose by requiring that disputes be settled or barred within a reasonable time. Horwood, 2001 WL
987344, at *2. Generally a cause of action accrues when a wrongful act causes a legal injury, even
if the fact of injury is not discovered until later, and even if all resulting damages have not yet
occurred. See S.V., 933 S.W.2d at 3; see also Li v. University of Texas Health Science Center at
Houston, 984 S.W.2d 647, 651 (Tex. App.- Houston [14th Dist.] 1998, pet. denied). The discovery
rule is the legal principle which, when applicable, provides that limitations run from the date the
plaintiff discovers or should have discovered, in the exercise of reasonable care and diligence, the
nature of the injury. See Childs v. Haussecker, 974 S.W.2d 31, 40 (Tex. 1998); Willis, 760 S.W.2d
at 644. Discovering the "nature of the injury" requires knowledge of the wrongful act and the
resulting injury. See Childs, 974 S.W.2d at 40.

 LaGloria contends that the question submitted to the jury was erroneous because it did not
inquire whether LaGloria knew or should have known that the injury was "likely caused by the
wrongful conduct of another." LaGloria derives its requested language from the Texas Supreme
Court's decisions in KPMG Peat Marwick v. Harrison County Housing Finance Corp., 988
S.W.2d 746 (Tex. 1999) and Childs v. Haussecker, 974 S.W.2d 31 (Tex. 1998). In KPMG Peat
Marwick, the Court held that a cause of action accrues "when the plaintiff knew or should have
known of the wrongfully caused injury." 974 S.W.2d at 749. Similarly, in Childs, an occupational
disease case, the Court held that "a cause of action accrues whenever a plaintiff's symptoms manifest
themselves to a degree or for a duration that would put a reasonable person on notice that he or she
suffers from some injury and he or she knows, or in the exercise of reasonable diligence should have
known, that the injury is likely work-related." See Childs, 974 S.W.2d at 33.

 Carboline argues that LaGloria misinterprets these Texas Supreme Court cases. We disagree. 
In Childs, the Texas Supreme Court quite clearly stated, "when the discovery rule applies, accrual
is tolled until a claimant discovers or in the exercise of reasonable diligence should have discovered
the injury and that it was likely caused by the wrongful acts of another." Id. at 40; see also KPMG
Peat Marwick, 988 S.W.2d at 749 (statute tolls until plaintiff knew or should have known of the
wrongfully caused injury); Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 224 (Tex. 1999) (issue
characterized as whether plaintiff knew or should have known, through the exercise of reasonable
diligence, that the injury was likely work-related); Moreno v. Sterling Drug, Inc., 787 S.W.2d 348,
351 (Tex. 1990) (discovery rule tolls the running of the limitations period until the plaintiff
discovers, or in the exercise of reasonable diligence should have discovered, the nature of the injury);
Pecan Valley Nut Company, Inc. v. E.I. Du Pont De Nemours & Company, 15 S.W.3d 244, 246
(Tex. App- Eastland 2000, pet. granted) (discovery rule tolls the running of the limitations period
until the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the
nature of the injury); Bayou Bend Towers Council of Co-Owners v. Manhattan Construction Co.,
866 S.W.2d 740, 742 (Tex. App.- Houston [14th Dist.] 1993, writ denied) (when applied, the
discovery rule operates to toll the running of the period of limitations until the time that the plaintiff
discovers, or through the exercise of reasonable care and diligence should have discovered, the
nature of his injury. To wit, the discovery of an injury and its general cause, as opposed to the exact
cause, is sufficient to commence the running of the limitations period). Recently, the Supreme Court
in Horwood, stated that "[t]he discovery rule exception operates to defer accrual of a cause of action
until the plaintiff knows or, by exercising reasonable diligence, should know of the facts giving rise
to the claim." Horwood, 2001 WL 987344, at *2. (5)

 Carboline submits that a more reasonable interpretation of the aforementioned authority is
that it would be appropriate to require some knowledge of a relationship between the environment
or activity at issue and the injury sustained, as opposed to a formal finding of causation or wrongful
conduct. However, we do not view the aforementioned authority to require a formal finding of
causation or wrongful conduct. (6) It is noteworthy that the language submitted to the trial court by
LaGloria sought a finding from the jury that the injury was "likely caused by the wrongful act of
another." Such language would not require a formal finding of causation against Carboline, but
rather queries generally as to whether the evidence supports that LaGloria knew, or should have
known, that its injury was likely caused by the wrongful acts of another. Such language does not
indicate "another" was Carboline, but rather, emphasizes the issue of whether LaGloria discovered,
or should have discovered the "nature of its injury." See Childs, 974 S.W.2d at 40 (discovering the
"nature of the injury" requires knowledge of the wrongful act and the resulting injury). Thus,
LaGloria's knowledge that its injury was likely caused by the wrongful conduct of another would not
equate to a finding of causation or wrongful conduct against Carboline.

 Carboline notes that none of the authority cited by LaGloria dictates or suggests how a jury
issue on the discovery rule should be worded. Carboline further indicates that it was unable to locate
any case "in which a court sanctioned a discovery rule jury issue containing a reference to an injury
being caused by the alleged wrongful conduct of another (or words to that effect)." However, in
Willis, the Texas Supreme Court stated, "...a correctly worded discovery rule issue would have asked
when the claimant discovered, or should have discovered, in the exercise of reasonable care and
diligence, the facts establishing the elements of the cause of action." Willis, 760 S.W.2d at 647. In
order for a cause of action to exist, there must have been a legal wrong, see Farnsworth v. Massey,
365 S.W.2d 1, 5 (Tex. 1963), resulting in injury. See Hernandez v. Great American Insurance
Company of New York, 456 S.W.2d 729, 733 (Tex. Civ. App.- Corpus Christi 1970, writ granted),
rev'd on other grounds, 464 S.W.2d 91 (Tex. 1971); see also KPMG Peat Marwick, 988 S.W.2d
at 749 (cause of action accrues when the plaintiff knew or should have known of the wrongfully
caused injury). Although the language used by the Supreme Court to describe the discovery rule has
varied slightly since Willis, the rule itself has not changed. See, e.g., KPMG Peat Marwick, 988
S.W.2d at 749. Therefore, we hold that a correctly worded discovery rule issue must include
language inquiring as to when, if at all, the plaintiff discovered, or in the exercise of reasonable care
and diligence should have discovered, the "nature of the injury" as that term has been defined by the
Texas Supreme Court. (7) See Childs, 974 S.W.2d at 40.


Wording of the Charge Question At Issue

 Alternatively, Carboline contends that the question it submitted did inquire of the jury as to
the necessary causal connection. Specifically, Carboline contends that the language in the charge
question regarding corrosion "that was occurring under the Pyrocrete 102 fireproofing at LaGloria's
refinery in Tyler, Texas" is sufficient to establish what it interprets to be the necessary causal
connection between the injury and the likely wrongful act of a third party. We disagree. First,
Carboline's premise that the aforementioned language is sufficient is based on its contention that all
that is required for deferred accrual is some knowledge of a relationship between the environment
or activity at issue and the injury sustained. For the reasons set forth above, the attenuated standard
urged by Carboline is not consistent with the language utilized by the Texas Supreme Court on this
issue. 

 However, even assuming arguendo that Carboline's interpretation is accurate, we disagree
with the notion that the jury recognized that its affirmative answer to the question submitted
amounted to a finding that LaGloria discovered or should have discovered a relationship between
the Pyrocrete 102 fireproofing and the corrosion. The question submitted to the jury asked, "Do you
find from a preponderance of the evidence LaGloria discovered, or in the exercise of reasonable
diligence should have discovered, before April 13, 1991, the existence of corrosion that was
occurring under Pyrocrete 102 fireproofing at LaGloria's refinery in Tyler, Texas." (Emphasis
added). At oral argument, Carboline argued that the jury's finding as to the location of the corrosion
was the equivalent of a finding of the necessary causation component. Carboline emphasizes in its
brief that LaGloria's acknowledgment of the severity of the corrosion further bolsters its position on
this issue. However, the jury was given no instruction related to the location language Carboline
equates to the causal component. If the language regarding location had a meaning peculiar to the
law apart from its literal meaning, the jury should have been made aware of the meaning of this
necessary element. See, e.g., Adams v. Valley Federal Credit Union, 848 S.W.2d 182, 185 (Tex.
App.- Corpus Christi 1997, pet. denied) (instructions may serve to set forth the elements of the cause
of action). Moreover, during jury argument, Carboline did not make reference to this interpretation
or otherwise attempt to explain that the language relating to location was to be interpreted by the jury
as containing a necessary causal component linking environment to injury. Based on our review of
the record, there is nothing to indicate that the jury understood the language regarding the location
of the corrosion to equate to anything but location. There is no indication that the location language
in the charge was understood by the jury to have any other purpose, but to distinguish corrosion
under Pyrocrete 102 from corrosion elsewhere in LaGloria's refinery, any of which could have
conceivably been caused by something other than Pyrocrete 102. Therefore, we hold that the
language regarding corrosion "that was occurring under the Pyrocrete 102 fireproofing at LaGloria's
refinery in Tyler, Texas" was insufficient to correctly frame the missing requirements of a properly
worded discovery rule issue.


Preservation of Error

 Carboline further contends that LaGloria's charge objections were not sufficient to preserve
its complaint on this issue. Carboline first argues that LaGloria's failure to object to the description
of relationship between the fireproofing and corrosion constitutes waiver. The test for determining
if a party has preserved error in the jury charge is whether the party made the trial court aware of the
complaint timely and plainly, and obtained a ruling. See State Dept. of Highways & Pub. Transp.
v. Payne, 838 S.W.2d 235, 241 (Tex. 1992). At trial, LaGloria objected to the charge question in
that it "leaves out a necessary element, and that is, that the injury suffered by LaGloria was likely
- was likely caused by the wrongful act of another." LaGloria then requested that the trial court
submit a question containing the language that would properly incorporate the missing element. 
LaGloria's objection was overruled. This is the very issue LaGloria now raises on appeal. 
Carboline's contention that LaGloria should have objected to the causation language that existed in
the charge question assumes that such language could be interpreted to include a causation
component. We do not believe it does. We hold that LaGloria's objection was sufficient to make
the trial court aware of its complaint that it now raises on appeal, both timely and plainly. 


Reversible Error

 It is fundamental to our system of justice that parties have the right to be judged by a jury
properly instructed on the law. See Crown Life Insurance Company v. Casteel, 22 S.W.3d 378, 388
(Tex. 2000). Error in the jury charge is reversible if, when viewed in light of all the circumstances,
it amounts "to such a denial of rights of the complaining party as was reasonably calculated and
probably did cause the rendition of an improper judgment." Niemeyer/Tana Oil and Gas
Corporation v. Tana Oil and Gas Corporation, 39 S.W.3d 380, 389 (Tex. App.- Austin 2001, pet.
denied). The trial court's discretion in this area is limited by, among other things, asking questions
that control the disposition of the case and the proper submission of the issues. See Alcantara, 764
S.W.2d at 867. It follows that a trial court's decision to submit a charge question to the jury that
omits reference to a necessary element probably caused the rendition of an improper judgment and
constitutes an abuse of discretion. LaGloria's first issue is sustained.


Inherent Undiscoverability, DTPA 

and the Deferred Accrual Exceptions Carboline next argues that the application of the discovery rule to LaGloria's claims was
improper because the injury suffered by LaGloria was not inherently undiscoverable. At trial,
Carboline made an oral motion for directed verdict, which was denied, thereby preserving error as
to any of the same contentions it now raises on appeal. See, e.g., Samedan Oil Corporation v.
Intrastate Gas Gathering, Inc., No. 12-99-00242-CV, 2001 WL 1153443, at *18 (Tex. App.- Tyler,
September 28, 2001). The causes of action upon which LaGloria sought to recover are DTPA,
fraudulent misrepresentation and fraudulent concealment. 

 The DTPA explicitly incorporates the language of the discovery rule, deferring the accrual
of the limitations period until the consumer discovers or in the exercise of reasonable diligence
should have discovered the occurrence of the false, misleading, or deceptive act or practice. See
Tex. Bus. & Comm. Code § 17.565. Thus, the legislature has already determined the applicability
of the discovery rule to a claim properly asserted under the DTPA, and the two judicially-created
requirements of inherent undiscoverability and objective verifiability do not apply to LaGloria's
DTPA claim. See Burns v. Thomas, 786 S.W.2d 266, 267 (Tex. 1990); Pecan Valley Nut
Company, 15 S.W.3d at 247. 

 With regard to LaGloria's common law claims, in a case involving fraud, the statue of
limitations does not commence to run until the fraud is discovered or until it might have been
discovered by the exercise of reasonable diligence. See Little v. Smith, 943 S.W.2d 414, 420 (Tex.
1997); see also Altai, 918 S.W.2d at 456; Gaddis v. Smith, 417 S.W.2d 577, 579-80 (Tex. 1967)
(a cause of action based on actionable fraud accrues when the fraud is discovered, or by the exercise
of reasonable diligence should have been discovered); Rodessa Resources, 5 S.W.3d at 365;
Fitzpatrick v. Marlowe, 553 S.W.2d 190, 194 (Tex. Civ. App.- Tyler 1977, writ ref'd n.r.e.). Also,
proof of fraudulent concealment tolls the accrual of limitations. See Borderlon v. Peck, 661 S.W.2d
907, 908 (Tex. 1983) (where a defendant is under a duty to make disclosure, but fraudulently
conceals the existence of a cause of action from the party to whom it belongs, the defendant is
estopped from relying on the defense of limitations until the party either learns of its right of action
or should have learned through the exercise of reasonable diligence); see also KPMG Peat Marwick,
988 S.W.2d at 749. 

 As it relates to LaGloria's fraud and fraudulent concealment claims, we are not dealing with
the traditional discovery rule, which requires that the wrongful act be inherently undiscoverable
before the doctrine will be applied. See Rodessa Resources, 5 S.W.3d at 365. The Court in S.V.
held that the cases in which we have deferred accrual of causes of action for limitations purposes fall
into two categories: those involving fraud and fraudulent concealment, and all others. See S.V., 933
S.W.2d at 4. The deferral of accrual in the latter types of cases is properly referred to as the
discovery rule. See Rodessa Resources, 5 S.W.3d at 366. We observe the distinction because each
is characterized by different substantive and procedural rules. Id., citing Weaver v. Witt, 561 S.W.2d
792, 793-94 (Tex. 1977); see also American Petrofina, Inc. v. Allen, 887 S.W.2d 829 (Tex. 1994);
Woods v. William M. Mercer, Inc., 769 S.W.2d 515, 518 (Tex. 1988). However, even though cases
involving fraud and fraudulent concealment are not true discovery rule cases, they are applied in
much the same manner. See Rodessa Resources, 5 S.W.3d at 366; see also, e.g., S.V., 933 S.W.2d
at 6. Indeed, we find the language employed by the deferred accrual exceptions to fraud and
fraudulent concealment cases, as well as the language utilized in the DTPA, to be nearly
indistinguishable from the language of the discovery rule, once its application has been determined
to be appropriate. However, for the purposes of evaluating Carboline's present contention, one
distinction is noteworthy - there is no requirement that the wrongful act be inherently undiscoverable
before the doctrine will be applied. See Rodessa Resources, 5 S.W.3d at 365. Carboline's
contention is overruled. (8)


Finding Related to Actual Discovery of Injury

 Carboline next contends that because the issue submitted to the jury was submitted in the
disjunctive (9), the jury's affirmative finding applies to both theories submitted, irrespective of whether
the charge question improperly omitted an element of the discovery rule. However, regardless of
whether the jury's finding was based on whether LaGloria actually discovered the injury in question,
or should have discovered the injury, either finding would further require a finding that LaGloria
discovered or should have discovered that the injury was likely caused by the wrongful acts of a third
party. See, e.g., Steel, 997 S.W.2d at 224 (issue characterized as whether plaintiff knew or should
have known, through the exercise of reasonable diligence, that the injury was likely work-related)
(emphasis added); KPMG Peat Marwick, 988 S.W.2d at 749 (statute tolls until plaintiff knew or
should have known of the wrongfully caused injury) (emphasis added); Childs, 974 S.W.2d at 34
(statute tolls until person knows, or in the exercise of reasonable diligence should have known, that
the injury is likely work-related) (emphasis added); Moreno, 787 S.W.2d at 351 (discovery rule tolls
the running of the limitations period until the plaintiff discovers, or in the exercise of reasonable
diligence should have discovered, the nature of the injury) (emphasis added); Bayou Bend, 866
S.W.2d at 742 (When applied, the discovery rule operates to toll the running of the period of
limitations until the time that the plaintiff discovers, or through the exercise of reasonable care and
diligence should have discovered, the nature of his injury. To wit, the discovery of an injury and
its general cause, as opposed to the exact cause, is sufficient to commence the running of the
limitations period) (emphasis added). (10)

 However, even assuming that the omitted version of the charge did not affect the actual
knowledge component of the question, the outcome would not change. When a jury bases a jury
finding on a single broad-form question that commingles invalid theories with valid theories, the
appellate court is often unable to determine the effect of this error. See Samedan Oil Corporation, 
2001 WL 1153443, at *21, quoting Casteel, 22 S.W.3d at 388. Accordingly, when a trial court
submits a single broad-form question incorporating multiple theories on which the jury could base
its answer, the error is harmful and a new trial is required when the appellate court cannot determine
whether the jury based its verdict on an improperly submitted invalid theory. Id. Thus, even
assuming that the omitted element did not relate to actual discovery, we would be unable to
determine whether, in fact, the jury based its affirmative answer on a valid underlying theory and
would still overrule Carboline's contention.

 Carboline also contends that LaGloria has admitted that it had actual knowledge of the nature
of its injury as of August or September 1992. Since the statute of limitations for the DTPA is two
years, (11) Carboline argues that the instant case, which was filed on April 13, 1995, is barred by
limitations. However, Carboline has failed to properly secure a jury finding on the issue of when
LaGloria actually discovered the nature of its injury and it would not be appropriate for this Court
to supplant its own factual finding. See Herbert v. Herbert, 754 S.W.2d 141, 143 (Tex. 1988). 
Carboline's contention is overruled.


Applicable Statute of Limitations for Fraud

 Carboline finally contends that LaGloria's fraud claims are likewise governed by a two-year
statute of limitations. (12) Carboline's contention is based on its theory that the limitations period
applicable to LaGloria's fraud claims depends upon the date on which the cause of action accrued. 
This is not an accurate statement of the law. Generally, the statute of limitations in force at the time
suit is brought provides the applicable limitation period. See Raley v. Wichita County, 72 S.W.2d
577, 579 (Tex. Comm. App. 1934, opinion adopted). Carboline has offered no authority for its
statement of the law, nor has it made any contentions that the general rule regarding applicable
limitations period should not apply. As such, we will apply the general rule, and hold that
LaGloria's fraud claim is governed by a four-year statute of limitations in effect at the time suit was
brought in 1995. See Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a)(4) (Vernon Supp. 2001). 
Moreover, Carboline's contention regarding the two-year statute of limitations for fraud is based on
its contention that LaGloria conceded when it had actual knowledge of the nature of its injury. As
set forth above, there has been no jury finding on when LaGloria's cause of action accrued based on
its actual knowledge and this Court will not supplant its own factual finding. See Herbert, 754
S.W.2d at 143. 


To Render or To Remand

 When reversing a trial court's judgment, the court must render the judgment that the trial
court should have rendered, except when a remand is necessary for further proceedings or the
interests of justice require a remand for another trial. Tex. R. Civ. P. 43.3. When the question
submitted to the jury is immaterial, rendition is appropriate. See Torrington Company v. Stutzman,
46 S.W.3d 829, 839 (Tex. 2000). The failure to include, over objection, the essential elements of
a claim in a jury question renders that question immaterial. Id., at 839-40 (charge question
immaterial where it allowed jury to find defendant liable even if plaintiffs did not establish, by
including necessary elements in instructions accompanying broad-form negligence question, the
necessary factual predicates of a negligent undertaking duty). Inasmuch as the facts of the present
case are analogous to Stutzman, we are bound by the Texas Supreme Court's decision, and thus,
hold the charge question at issue to be immaterial. (13) 

 However, in Stutzman, the Court remanded the cause in the interests of justice. See
Stutzman, 46 S.W.3d at 840. The Court based its decision on the fact that it had "never considered
how an undertaking claim should be submitted to the jury" and that courts of appeals had not
addressed the issue at the time that case was tried. Id. The Court also noted that the law regarding
the submission of the elements of a negligent undertaking duty had, prior to its decision, remained
unclear. Id. at 841. Neither are true in the instant case. The Texas Supreme Court clearly set forth
how a jury question on the discovery rule should worded as early as 1988, seven years before the
instant case was filed. See Willis, 760 S.W.2d at 647. Moreover, while the language the Texas
Supreme Court has chosen to describe the requirements of the discovery rule has varied, it has been
unwavering on its requirement that the statute of limitations begins to run when the plaintiff
discovered or, through the use of reasonable diligence, should have discovered the nature of his
injury, as that term has been defined. See, e.g., Horwood, 2001 WL 987344, at *2; Steel, 997
S.W.2d at 224; KPMG Peat Marwick, 988 S.W.2d at 749; Childs, 974 S.W.2d at 34; Moreno, 787
S.W.2d at 351; Pecan Valley Nut Company, Inc., 15 S.W.3d at 246; Bayou Bend, 866 S.W.2d at
742. (14) 

 However, the Supreme Court in Stutzman did not state that the factors it considered when
remanding in the interests of justice were exclusive. As we have stressed throughout, a separate trial
on limitations prior to a finding on liability creates great potential for confusion. The severance of
the limitations issue in this case caused this proceeding to be broken into two components: (1) a trial
on when LaGloria discovered or should have discovered its injury (15), and (2) a subsequent trial to
determine Carboline's liability, if any, and resulting damages. Since causation was to be determined
in the second component, the severance may have resulted in confusion in the court below as to
whether causation language was appropriate in the discovery rule issue submitted to the jury. We
have encountered similar confusion, and have found it necessary to presume liability against
Carboline for the purposes of this opinion. In at least one instance, this presumption contributed to
our holding that the deferred accrual exception applied to LaGloria's causes of action because
Carboline could not, due to the procedural posture of the case, challenge the merit of any of
LaGloria's underlying causes of action. 

 While some other Courts of Appeals have held that a separate trial on limitations is
appropriate, see, e.g., Phipps v. Miller, 597 S.W.2d 458, 460 (Tex. Civ. App.- Dallas 1980, writ
ref'd n.r.e.); Meredith v. Massie, 173 S.W.2d 799 (Tex. Civ. App.- Amarillo 1943, writ. ref'd), 
neither of these cases involved the application of the discovery rule. We find it unlikely that had
this Court been called upon to decide the propriety of a separate trial on limitations in the instant
case, the result would have been the same as that reached in Miller and Massie. 

 Although we could render judgment in LaGloria's favor on limitations, the issue of liability
must still be resolved at the trial level. As such, we see great benefit and opportunity for the interests
of justice to be served by allowing the same jury that will determine liability, to properly determine
the issue of limitations under a correctly worded charge question. The addition of the limitations
issue to the trial on liability will not significantly increase the burden or expense on either party to
this litigation, while allowing the issue of whether LaGloria discovered or should have, through the
exercise of reasonable diligence, discovered the nature of its injury to be fairly decided by a jury
without the necessity of a presumption of liability against Carboline. Therefore, we hold that
remanding the issue of limitations to be considered at the trial on underlying liability serves the
interests of justice.

 Accordingly, we reverse the judgment of the trial court and remand the case for a new trial
on all issues. (16)


 LEONARD DAVIS 

 Chief Justice



Opinion delivered November 14, 2001.

Panel consisted of Davis, C.J., Worthen, J., and Griffith, J.





















(PUBLISH)
1. Sun has filed a motion joining Carboline's brief. As such, any reference to Carboline shall also relate to
Sun.
2. Tex. Bus. & Comm. Code Ann. § 17.41 et. seq (Vernon 1987).
3. We note from the outset that a separate trial solely on the issue of limitations conducted prior to a finding
of liability is unusual and creates great potential for confusion. By definition, an affirmative defense, such as statute
of limitations, assumes that the allegations in the plaintiff's petition are true. See Black's Law Dictionary 60 (6th
ed. 1990); see also RRR Farms, Ltd. v. American Horse Protection Association, Inc., 957 S.W.2d 121, 129-30
(Tex. App.- Houston [14th Dist.] 1997, pet. denied) (noting the legal definition of an "affirmative defense"). 
Although LaGloria objected at trial, it does not challenge the trial court's order granting a separate trial on the
limitations issue on appeal. As such, the issue is not before us as a ground for reversal. See Sisters of Charity of the
Incarnate Word v. Gobert, 992 S.W.2d 25, 31 (Tex. App.- Houston [1st Dist.] 1997, no pet). In our discussion of
the issues of limitations, we will presume, for the purposes of this opinion only, a finding of liability against
Carboline Company. However, our discussion of the limitations issue should not be interpreted as approving the
propriety or advisability of a separate trial on limitations.
4. As discussed in greater detail below, LaGloria's claims for fraud, fraudulent concealment and violations
of the DTPA are governed not by the discovery rule but rather by separate deferred accrual exceptions to the general
rule that a cause of action accrues when a wrongful act causes a legal injury, rather than the discovery rule. 
However, even though LaGloria's claims are not true discovery rule cases, these deferred accrual exceptions are
applied in much the same way as the discovery rule is applied to cases in which its application has been determined
to be appropriate. See  Rodessa Resources, Inc. v. Arcadia Exploration and Production Company, 5 S.W.3d 363,
366 (Tex. App.- Texarkana 1999, no pet.); see also, e.g., S.V., 933 S.W.2d at 6. Indeed, the language of the
discovery rule is nearly indistinguishable from the language used in the DTPA and deferred accrual exception
applicable to fraud and fraudulent concealment claims. As such, for the purpose of determining whether the charge
question at issue omits a necessary element, we will rely upon cases concerning the traditional discovery rule.
5. See also Tex. Bus. & Comm. Code Ann. § 17.565 (Vernon 1987) ("All actions...must be
commenced...within two years after the consumer discovered or in the exercise of reasonable diligence should have
discovered the occurrence of the false, misleading or deceptive act or practice"); KPMG Peat Marwick, 988 S.W.2d
at 749; Little v. Smith, 943 S.W.2d 414, 420 (Tex. 1997) (generally, in a case of fraud, the statue of limitations does
not commence to run until the fraud is discovered or until it might have been discovered by the exercise of
reasonable diligence); Altai, 918 S.W.2d at 456; Borderlon v. Peck, 661 S.W.2d 907, 908 (Tex. 1983) (where a
defendant is under a duty to make disclosure, but fraudulently conceals the existence of a cause of action from the
party to whom it belongs, the defendant is estopped from relying on the defense of limitations until the party either
learns of its right of action or should have learned through the exercise of reasonable diligence); Gaddis v. Smith,
417 S.W.2d 577, 579-80 (Tex. 1967) (a cause of action based on actionable fraud accrues when the fraud is
discovered, or by the exercise of reasonable diligence should have been discovered); Rodessa Resources, 5 S.W.3d
at 365; Fitzpatrick v. Marlowe, 553 S.W.2d 190, 194 (Tex. Civ. App.- Tyler 1977, writ ref'd n.r.e.).
6. Carboline later contends that a formal finding of wrongful conduct is inconsistent with a separate
limitations trial. However, since we do not conclude that the issue requires a formal finding of wrongful conduct, we
disagree with Carboline's contention. However, we note that such an issue is only one of many pitfalls that could
arise as a result of conducting a separate trial on an affirmative defense prior to securing a finding on liability. See
n.3.
7. We do not suggest that this language is the exclusive language available in jury questions involving the
discovery rule as the language used by the Texas Supreme Court to describe the same rule has varied over the years.
8. Carboline has not, and as a practical matter cannot, challenge the merits of LaGloria's underlying causes
of action for fraud, fraudulent concealment and violations of the DTPA. We must necessarily presume a finding of
liability against Carboline for the purposes of this opinion only. See n.3. We note that this is another of many
potential pitfalls related to the conduct of a separate trial on the affirmative defense of limitations, prior to a trial on
liability. See n.3.
9. In this context, the phrase "submitted in the disjunctive" means that the question asked the jury to make
one finding regarding whether LaGloria discovered or should have discovered the corrosion at issue, despite the
possibility that the jury could conceivably reach different conclusions regarding whether LaGloria actually
discovered the corrosion as opposed to whether LaGloria should have discovered it.
10. See also n.5.
11. Tex. Bus. & Comm. Code Ann. § 17.565 (Vernon 1987).
12. Prior to 1979, a cause of action for fraud was subject to a two-year statute of limitations. See Acts 1975,
64th Leg., p. 649, ch. 269, § 1, amended by Acts 1979, 66th Leg., p. 1768, ch. 716 §§ 1, 2, repealed by Acts 1985,
69th Leg., ch. 959, § 9(1), eff. Sept. 1, 1985; to be codified as amended to Tex. Civ. Prac. & Rem. Code. Ann. §
16.004(a)(4) (Vernon Supp. 2001).
13. In a footnote, Carboline suggests that rendition of judgment on our part would be inappropriate. In
support of its proposition, it cites Minnesota Mining and Manufacturing Company v. Nishika, Ltd., 953 S.W.2d
733 (Tex. 1997) and Jackson v. Fontaine's Clinics, Inc., 499 S.W.2d 87 (Tex. 1973). However, these cases are
distinguishable from the case at hand. In Nishika, the argument for rendition was based on the premise that there
was no evidence to support attorney's fees. The Court determined that there was some evidence of attorney's fees,
and thus, a rendition was not appropriate. See Nishika, 953 S.W.2d at 739. In Jackson, the Court reversed and
remanded the claim because the damages question failed to properly guide the jury on the appropriate legal measure
of damages. See Jackson, 499 S.W.2d at 90. Neither case concerns a situation in which a jury question omitted a
necessary element of the cause of action.
14. See also n.5.
15. We are not saying that the inquiry here as to when LaGloria discovered its injury was correct. As we
have previously noted, a proper jury issue in a discovery rule case would inquire when the party discovered or should
have discovered the nature of its injury, not simply the injury alone.
16. As we have reversed the judgment in favor of LaGloria, we need not address the issues LaGloria raises
regarding the admission of certain evidence or the trial court's ruling allowing Carboline the right to open and close. 
However, we note that the law is clear that the party seeking the benefit of the discovery rule to avoid limitations has
the burden of pleading and proving the discovery rule in a trial on the merits. See Steel, 997 S.W.2d at 223 n.3.